**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Thomas Ganci, on behalf of | : | |
| himself and other similarly | : | Case No. 2:15-cv-2959 |
| situated individuals | : | |
| nationwide and the Rule | : | Judge Smith |
| 23 class | : | |
| Plaintiff | : | Magistrate Judge Kemp |
| | : | |
| v. | : | |
| | : | |
| MBF Inspection Services, Inc., | : | |
| | : | |
| Defendant | : | |
| | : | |

<u>**DEFENDANT MBF INSPECTION SERVICES, INC.'S MEMORANDUM IN OP-
POSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION UNDER
FED.R.CIV.P. 23**</u>

# TABLE OF CONTENTS AND ARGUMENT SUMMARY

I. INTRODUCTION ........................................................................... 1

II. LAW AND ARGUMENT ............................................................... 1

   A. THE GENERAL POLICY OF FED.R.CIV.P. 23 ................................... 1

A class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). Certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).

   B. THE FOUR RULE 23(A) FACTORS ................................................. 3

      1. Numerosity ................................................................................. 4

         a. Introduction—The Impracticability of Joinder ...................... 4

         b. Plaintiff has the Names and Addresses of All Putative Class Members. ............................................................................... 6

Where class members may be easily identified, joinder is deemed more practicable. *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 182 F.R.D. 523, 530 n. 6 (N.D.Ohio 1998)

         c. The Putative Class Members are Geographically Dispersed. .............. 8

Geographic dispersion of putative plaintiffs is not by itself sufficient to show joinder is impracticable.

         d. There is no Evidence or Reasonable Apprehension of Retaliation. ..... 9

Plaintiff fails to submit any evidence in support of an alleged fear of retaliation by the putative class members. The evidence which does exist shows no retaliation at all.

         e. Judicial Economy does not Require Certification of a Class Action... 11

The judicial economy joinder element favors certification of a class action when putative plaintiffs are filing their own claims, so that the matter can be organized in one suit. *Greko v. Diesel U.S.A, Inc.*, 277 F.R.D. 419, 425 (N.D.Cal. 2011)

f. There is no Evidence that Putative Plaintiffs Lack the Financial Resources to Institute Individual Lawsuits. ....................................... 12

In the joinder analysis, "the Court may consider the financial resources of the potential class members with regard to their ability to institute individual law-suits" *Powell v. Tosh*, 280 F.R.D. 296, 304 (W.D.Ky. 2012), *vacated in part on other grounds on reconsideration*, 2012 U.S. Dist. LEXIS 92990 (W.D.Ky. July 5, 2012). Therefore, where—as in this case—"[p]laintiff has not presented evidence that the class members are of limited financial means, or are unable to institute individual lawsuits, * * * the Court is not willing to conclude that potential class members cannot bring their own lawsuit and assert their own claims." *Id.*

2. Commonality ........................................................................................... 14

Plaintiff does not satisfy the commonality element at Rule 23(a)(2). *Hughes v. Gulf Interstate Field Servs.*, Inc., No. 2:14-cv-000432, 2015 U.S. Dist. LEXIS 88205 (S.D.Ohio July 7, 2015). Each of the subject job titles involves numerous functions unique to that title. Plaintiffs are paid on a salary basis.

3. Typicality ............................................................................................... 22

Plaintiff does not satisfy the typicality element at Rule 23(a)(3). Typicality focuses on the similarity of the legal theory and legal claims; the similarity of the individual circumstances on which those theories and claims are based; and the extent to which the proposed representative may face significant unique or atypical defenses.

4. Adequate Representation ..................................................................... 23

C. RULE 23(b)(3) FACTORS – PREDOMINANCE AND SUPERIORITY .................... 23

1. Introduction ......................................................................................... 23

The factors at Rule 23(b)(3)(A) – (D) are nonexhaustive

2. Predominance ....................................................................................... 24

Predominance, though related to commonality, is "far more demanding." Affirmative defenses should be considered in the predominance analysis. Predominance is not met where "individual issues relating to [plaintiffs'] eligibility for the administrative, professional, and highly compensated employee exemptions will predominate over any questions of law or fact that are common to the class members." *In re RBC Dain Rauscher Overtime Litig.*, 703 F.Supp.2d 910, 968 (D.Minn. 2010)

3.  Superiority ............................................................................................ 26

a.  There is no Evidence that the Amount of Each Putative Plaintiff's Claim Renders the Claim One of "Negative Value." ........................... 26

Claim Renders the Claim One of " Negative Value." A "negative value" suit, in which the costs of enforcement in an individual action would exceed the expected individual recovery" is "the most compelling rationale for finding superiority in a class action." Bacon v. Honda of Am. Mfg., Inc., 205 F.R.D. 466, 487 (S.D.Ohio 2001), aff'd, 370 F.3d 565 (6th Cir. 2004). This factor is absent from this case.

b.  The Conflict Between the FLSA and Rule 23 Renders a Class Action not the Superior Method to Adjudicate Putative Plaintiffs' State Law Claims. .............................................................................................. 27

The fact that only 4 of the 66 putative plaintiffs elected to opt-in to the FLSA portion of the case shows a class action is the "superior" path for the state law claims to be pursued.

c.  The Availability of Attorneys' Fees Renders a Class Action not Superior. .............................................................................................. 29

The court's discretion to award plaintiffs attorneys' fees if successful on their state law claims means a class action is not superior to individual litigation of the state claims. R.C. 4111.10(A); Coleman v. GMAC, 296 F.3d 443, 449 (6th Cir. 2002); Cancino v. Yamaha Motor Corp., No. 3:04-cv-274, 2010 U.S. Dist. LEXIS 76645 (S.D.Ohio 2010)

d.  The Possible Preclusive Effect of a Judgment in a Certified Class Case Might Unfairly Abolish the Rights of the 62 Putative Plaintiffs who did not Opt-in to the FLSA Portion of the Case. .................................. 30

"The maintenance of the FLSA claim and parallel state law claim in the same action, where both claims are predicated on the same conduct of the defend-ant, poses a significant risk that employees, who neither opt in to the FLSA collective action nor opt out of the state law class action, will be collaterally estopped from asserting FLSA claims in their own right." Woodard v. FedEx Freight East, Inc., 250 F.R.D. 178, 186 (M.D.Pa. 2008). For this reason, a class action is not a superior means of hearing putative plaintiffs' state law claims.

III.  CONCLUSION ............................................................................................. 33

## I.   INTRODUCTION

Plaintiffs' *Motion for Class Certification* should be denied. As demonstrated below, Plaintiff fails to satisfy the criteria of numerosity, commonality, typicality, predominance, and superiority.

## II.   LAW AND ARGUMENT

### A.   THE GENERAL POLICY OF FED.R.CIV.P. 23

Plaintiff quite surprisingly engages in no discussion as to the many fundamentals of class action litigation, including the principle that a "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)); *see also Davis v. Cintas Corp.*, 717 F.3d 476, 483 (6th Cir. 2013) (same); *Enriquez v. Cherry Hill Mkt. Corp.*, 993 F.Supp.2d 229, 236 (E.D.N.Y. 2014) ("*Dukes* is widely understood as reinvigorating the notion that class actions are the exception, rather than the rule.").

Further, "Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350. Rather, "a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). "[C]ertification is proper only if 'the trial court is satisfied, *after a **rigorous analysis**, that the prerequisites of Rule 23(a) have been satisfied.'" *Id.* (emphasis added) (quoting *Dukes*, 568 U.S. at 351); *see also Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 629 (6th Cir. 2011) ("The 'rigorous analysis' requirement is critical because it ensures that each of the prerequisites for certification have actually been satisfied."); 3 WILLIAM B. RUBENSTEIN, *NEWBERG ON CLASS ACTIONS* § 7:19 (5th ed.2013) ("The core concept is that the district court must provide a

'rigorous analysis' of the class certification motion."); *Kennedy v. United Healthcare of Ohio, Inc.*, 206 F.R.D. 191, 195 (S.D.Ohio 2002) (Smith, J.) ("The Court must conduct a rigorous analysis in addressing a motion to certify. * * * Although the district court has broad discretion in determining whether to certify a class, its discretion is circumscribed by Rule 23."). It is therefore fundamental that "[c]lass certification is far from automatic," *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 249 (D.C. Cir. 2013).

It is also "the plaintiff's burden 'to establish his right' to class certification." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2007); *see also Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1218 (10th Cir. 2013) ("[I]t is not the defendant who bears the burden of showing that the proposed class does not comply with Rule 23, but [rather] the plaintiff who bears the burden of showing that the class does comply with Rule 23."). And this burden is not at all light. *Bacon v. Honda of Am. Mfg.*, 370 F.3d 565, 571 (6th Cir. 2004) (noting "the heavy lifting of showing eligibility for class certification" under Rule 23); *Epps v. JPMorgan Chase Bank N.A.*, No. WMN-10-1504, 2012 U.S. Dist. Lexis 153549, *24 (D.Md. Oct. 22, 2012) ("In the wake of the Supreme Court's opinion in *Wal-Mart Stores, Inc. v. Dukes*, * * * parties seeking class certification face a heavy burden.").[1]

Consideration of Plaintiff's motion is directed also by the principle that "[g]iven the huge amount of judicial resources expended by class actions, particular care in their issuance is required." *Barrett v. ADT Corp.*, No. 2:15-cv-1348, 2016 U.S. Dist.

---

[1] In *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402 (6th Cir. 2012), the Sixth Circuit explained that unlike some its sister circuits, it did not impose a "preponderance of the evidence" standard upon a Rule 23 plaintiff; rather, the Supreme Court's "rigorous analysis" standard *was itself* the burden of proof, meaning a plaintiff satisfied its burden only if the court was satisfied—after the requisite "rigorous analysis"—that plaintiff had satisfied all of Rule 23's criteria. *Id.* at 418 n. 8.

Lexis 28767, *18 (S.D.Ohio Mar. 7, 2016) (Smith, J.) (quoting *Pipefitters*, 654 F.3d at 630); *see also CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011) ("Certification as a class action can coerce a defendant into settling on highly disadvantageous terms regardless of the merits of the suit. * * * [A] grant of class status can put considerable pressure on the defendant to settle, even when the plaintiff's probability of success on the merits is slight[.]"); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 167 (3d Cir. 2001) ("Irrespective of the merits, certification decisions may have a decisive effect on litigation.").

As now shown, Plaintiff's Motion—analyzed under these standards—does not succeed.

## B. THE FOUR RULE 23(A) FACTORS

Fed.R.Civ.P. 23(a) provides that "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." "[T]he requirements of Rule 23(a) are conjunctive," *Edwards v. McCormick*, 196 F.R.D. 487, 494 (S.D.Ohio 2000) (Marbley, J.), so "*all* [must] be met before a class can be certified." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (emphasis in original).[2]

Plaintiff does not satisfy the first three elements.

---

[2] Plaintiff also, of course, must satisfy Fed.R.Civ.P. 23(b). MBF addresses his failure to do so below.

1. **Numerosity**

   a. **Introduction—The Impracticability of Joinder**

Plaintiff fails to satisfy his burden of showing that "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). His motion indeed falls extremely short. His argument for impracticability of joinder refers to only one criterion—fear of retaliation—and fails to address any of the other, numerous criteria.

The first issue in considering a Rule 23(a)(1) argument involves recognizing that the Rule's true subject is not the raw number of putative class members, but rather whether that number makes their joinder "impracticable," i.e., "[w]hile [the rule] is commonly referred to as a 'numerosity' requirement, ***the real issue is whether the plaintiff seeking class certification has demonstrated impracticability of joinder***." *Turnage v. Norfolk S. Corp.*, 307 F. App'x 918, 921 (6th Cir. 2009) (emphasis added); *see also Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980) ("The basic question is practicability of joinder, not number of interested persons *per se*."); 1 NEWBURG § 3:11, p. 186 (5th ed. 2011) ("Rule 23(a)(1) is often referred to as the 'numerosity' requirement. In fact, the Rule's core requirement is that joinder be impracticable. * * * Thus, *Rule 23(a)(1) is **an impracticability of joinder rule, not a strict numerosity rule**.") (emphasis added).

So while Plaintiff argues that "Courts routinely hold that 'a class of 40 or more members is sufficient to meet the numerosity,'" he also correctly notes that "[t]here is no strict numeric threshold for the numerosity requirement." (Citing *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012).) *See also Am. Med. Sys.,* 75 F.3d at 1079 ("[T]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations.") (quoting *General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980)); *Bacon*, 370 F.3d at 570 ("There is no automatic cut-off point

at which the number of plaintiffs makes joinder impractical, thereby making a class-action suit the only viable alternative."); *Twegbe v. Pharmaca Integrative Pharm., Inc.*, No. CV 12-5080 CRB, 2013 U.S. Dist. LEXIS 100067, *6 (N.D.Cal. July 17, 2013) ("[Some] courts canvassing the precedent have concluded that the numerosity requirement is usually satisfied where the class comprises 40 or more members, and generally not satisfied when the class comprises 21 or fewer members. * * * *Exceptions to that rule abound*.") (emphasis added).

Additionally, "[t]he reason for [the impracticability] requirement is obvious. *Only when joinder is impracticable is there a need for a class action device*." *Am. Med. Sys.*, 75 F.3d at 1079 (emphasis added). The bedrock rule that a matter will not proceed as a class action when joinder is feasible or practicable is ably explained as follows:

> * * * Rule 23(a)(1)'s requirement that joinder be impracticable * * * reveals the legal system's preference that litigation be conducted by present, joined, individual litigants rather than by class representatives on behalf of absent class members. This preference is rarely discussed explicitly, much less defended, but it is clearly implied by a rule that defines joinder impracticality as the first threshold requirement for class actions. The preference for individual joinder reflects American adjudication's general theory that individuals possess a due process right to litigate for themselves and that representative litigation is therefore an exceptional form of litigation. The insistence that those proposing representative litigation show that joinder is impractical therefore safeguards individual due process rights by insisting that individuals get to litigate themselves so long as it is practical for them to do so.

1 *NEWBERG* § 3:11, p. 186.

The Sixth Circuit has held that "when considering whether joinder would be practicable in a given case, courts may consider 'ease of identifying members and determining addresses, ease of service on members if joined, [and] geographical disper-

sion' among other things." *Turnage*, 307 F. App'x at 921. Additional factors include "judicial economy arising from the avoidance of a multiplicity of actions, "the financial resources of class members," "the ability of claimants to institute individual lawsuits," and "the amount of each member's individual claim." *Wilson v. Anthem Health Plans of Ky., Inc.*, No. 3:14-CV-743-TBR, 2017 U.S. Dist. LEXIS 572, **11-12 (W.D.Ky. Jan. 4, 2017),

And "as with all of the requirements of Rule 23 * * *, the burden of proving that the class is so numerous that joinder is impracticable lies with the party seeking class certification." 5 MOORE'S FEDERAL PRACTICE § 23.22[3], p. 23-67 (3d ed.2017). Impracticability of joinder, therefore, "must be positively shown, and cannot be speculative." *Young*, 693 F.3d at 641; *see also O'Neil v. Appel*, 165 F.R.D. 479, 491 (W.D.Mich. 1995) ("Courts have repeatedly recognized that conclusory or speculative allegations that joinder is impracticable are not sufficient to satisfy the numerosity requirement of Rule 23(a)."), *adopted at* 165 F.R.D. 479 (W.D.Mich. 1996).

A review of these factors show Plaintiff has made no showing at all that joinder of the putative class members is "impracticable."

### b. Plaintiff has the Names and Addresses of All Putative Class Members.

A fundamental tenet in determining if joinder is impracticable is that "where class members may be easily identified, joinder is * * * more practicable." *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 182 F.R.D. 523, 530 n. 6 (N.D.Ohio 1998); *see also Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578, 583 (W.D.Mich. 2001) (same); 5 MOORE'S § 23.22[1][f], pp. 23-64 to 23-65 ("[J]oinder is more likely to be found to be practicable if the identity and addresses of the class members are readily ascertainable."); JOSEPH MCLAUGHLIN, *MCLAUGHLIN ON CLASS*

ACTIONS § 4:6 (13th ed.2016) ("When the members of the class can be identified without much difficulty, joinder is likely to be practicable even if scores of members are involved."); *Hum v. Dericks*, 162 F.R.D. 628, 635 (D.Haw. 1995) ("Where class members may be easily identified, joinder is also more practicable.").

Indeed, "knowledge of names and existence of members has been called the '*most important*' factor [in establishing numerosity], precisely because it renders joinder practicable." *Forde v. Waterman S.S. Corp.*, No. 12 Civ. 3396 (KBF), 2013 U.S. Dist. LEXIS 135307, *17 (S.D.N.Y. Sept. 18, 2013) (emphasis added) (quoting *Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 410-11 (S.D.N.Y. 1998)); *see also Kennedy v. Va. Polytechnic Inst. & State Univ.*, No. 7-08-cv-00579, 2010 U.S. Dist. LEXIS 101491, **10-11 (W.D.Va. Sept. 23, 2010) ("The ease of identifying any plaintiff who may wish to join this suit also indicates that joinder is practicable in this case, and therefore class certification is improper. Joinder is not impractical because the named plaintiffs * * * through their counsel, have access to the names, current addresses, and salary histories of all potential plaintiffs whose rights may be affected by the pending litigation. Because the plaintiffs themselves have identified all of the potential class members they seek to represent, joinder is practicable and preferred."); *Gries v. Std. Ready Mix Concrete, L.L.C.*, 252 F.R.D. 479, 486 (N.D.Iowa 2008) ("[T]he fact that [named] plaintiff Gries can contact each class member makes joinder practicable here. * * * Therefore, this factor weighs decidedly against finding that the numerosity requirement has been satisfied in this case."); *Giullari v. Niagara Falls Mem. Med. Ctr.*, No. 96-CV-0271E(H), 1997 U.S. Dist. LEXIS 1522, *10 (W.D.N.Y. Feb. 6, 1997) ("Most important, however [to the joinder analysis], is the fact that the plaintiffs have the names and addresses of every class member. * * * Consequently, the plaintiffs can and

may contact each member, apprise him or her of this lawsuit and ask whether he or she wishes to join in this action. Joinder is, therefore, practicable. * * * Indeed, the fact that the instant plaintiffs can contact each class member not only makes joinder practicable, it also reduces the possibility of this decision leading to a flood of individual lawsuits, inasmuch as it is reasonable to assume that putative class members contacted by the plaintiffs will either join in this action or forego whatever claims they may have[.]"); *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) ("Here, the district court concluded that, although the number of putative class members—eighty-four— was not insignificant, it was not such an overwhelmingly large number as to be prohibitive of joinder. Nor was there any problem locating the remaining individuals for joinder since all the names and addresses of potential plaintiffs had been provided during discovery.").

Here, where MBF has given Plaintiff's counsel the residence and email addresses of all putative class members (*Pl. Mot.* Ex. 6), joinder is unquestionably not impracticable.

### c. The Putative Class Members are Geographically Dispersed.

This factor is the only one favoring Plaintiff's claim of numerosity. This, of course, does not decide the issue in Plaintiff's favor. *Block v. First Blood Assocs.*, 125 F.R.D. 39, 42 (S.D.N.Y. 1989) ("[Geographic] dispersion is not enough to meet Rule 23(a)'s requirement."); 5 *MOORE'S* § 23.22[1][d], p. 23-61 ("Because Rule 23 requires that class members be so *numerous* that their joinder would be impracticable, geographic dispersion *alone* will not satisfy the impracticability requirement.") (emphasis added).

And significantly—as in this case—where there is geographical dispersion, *and*

the class members' names and addresses are known, the latter element wins out. *Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 410 (S.D.N.Y. 1998) ("Although the class members are geographically dispersed, the identity and whereabouts of all potential class members are known to the parties. [Named plaintiffs] could easily contact potential litigants and propose joinder to their actions."); *see also Mullis v. Mt. State Univ., Inc.*, No. 5:12-03158, 2014 U.S. Dist. LEXIS 40686, **12-13 (S.D.W.Va. Mar. 27, 2014):

> * * * From the record, it appears that the class members can be easily located. * * * Having access to this contact information, as plaintiff assures the court defendant does, means that each individual can be contacted to determine their interests in the litigation, their desire or lack thereof to join a class action, or their wish to bring an individual action. * * * And ***while it appears that the proposed class is geographically dispersed, the access to this contact information mitigates the problems raised by geographic dispersion.*** * * * (Emphasis added.)

Putative plaintiffs' geographical dispersion therefore does not mean joinder is impracticable.

### d. There is no Evidence or Reasonable Apprehension of Retaliation.

Plaintiff's sole argument for impracticability of joinder—fear of retaliation—goes nowhere,

First, Plaintiff fails to submit any *evidence* in support of retaliation. Plaintiff has attached to his Rule 23 motions declaration of three of the four putative class members who earlier opted-in to the FLSA claims. None of them makes any mention of facing retaliation, fearing retaliation, or witnessing or hearing about retaliation toward other MBF employees asserting their rights. This leaves Plaintiff's retaliation claim lifeless. *Sanft v. Winnebago Indus., Inc.*, 214 F.R.D. 514, 525 (N.D.Iowa 2003)

("[P]laintiff has not come forward with any evidence which would support the proposition that those unidentified class members who are still employed by Winnebago are actually fearful of reprisal or retaliation from defendants should those individuals be forced to join this lawsuit."); *Humphrey v. Intl. Paper*, No. 02 C 4147, 2003 U.S. Dist. LEXIS 16040, *47 (N.D.Ill. Sept. 11, 2003) ("Plaintiffs argue that joinder would be impractical because 'there are potential class members currently working at the facility that would inhibit employees and union members from coming forward.' * * * However, the plaintiffs have offered **no evidence** *that current employees have been chilled from coming forward due to a fear of retaliation*. Indeed, we note that one of the named plaintiffs, Mr. Humphrey, was recalled from lay off at International Paper on August 18, 2002, which was two months after this lawsuit was filed. And, in the amended complaint filed in October 2002, there is no allegation by Mr. Humphrey that he has been retaliated against since his recall. Accordingly, we see no basis to conclude that joinder would be impracticable because unnamed plaintiffs would be unwilling to sue for fear of retaliation.").

Second, the evidence which *does* exist shows no retaliation at all. 18 of the 66 putative plaintiffs currently work for MBF.[3] Five of them were working for MBF on January 18, 2017 (the date Plaintiff served his Second Set of Interrogatories, which sought the names of all MBF inspectors employed in Ohio, thus placing MBF on notice that those employees might be added to the case in a class action).[4] No action was taken against them, and they are still working. The other 13, though not working for

---

[3] I.e., Larry Alexander, Joel Batton, Kevin Binaut, Theodore Borst, Glynn Estess, Dennis Fontaine, Orville Frymier, Justin Gaily, Jeremy Gwalchmai, Merwin Hoover, Edward Kistler, Kenneth Martin, Trevor McAvery, Philip E. Mohler, Sr., Daniel Partridge, Travis Petty, Roxann Roach, and Edward Welsh. (*See* Declaration of MBF Human Resources Manager Shawn Andrus [Def. Ex. A] ¶ 5.)

[4] Batton, Kistler, Partridge, Petty, and Welch. (*See* S. Andrus Decl. ¶ 6.)

MBF on Jan. 18, 2017, have since been hired by MBF for work on new projects.[5] MBF also has, since Jan. 18, 2017, submitted the resumes of four additional Ohio putative plaintiffs to clients for hiring consideration.[6] Finally, since Jan. 18, 2017, MBF has contacted numerous additional putative plaintiffs, requesting updated resumes for submission to clients for future projects.[7] Some responded, and some did not.[8]

Finally, it should be noted that MBF has not and will not retaliate against its employees or former employees not only because it would be wrong, but because it would constitute business suicide. MBF's sole function is the staffing of projects initiated by its energy clients. Those clients expect MBF to provide them a complete array of *all* available, qualified and experienced workers. If MBF doesn't do this, its staffing competitors certainly will, causing a loss of business to MBF. For MBF to retaliate against or otherwise "blackball" any employee or former employee would thus cause it to be unable to offer that person's services to a client. MBF cannot ever afford to place itself in that position.

The "retaliation" element thus carries no weight in Plaintiff's claim that joinder is impracticable.

### e. Judicial Economy does not Require Certification of a Class Action.

The "judicial economy" joinder element favors certification of a class action when putative plaintiffs are filing their own claims, so that the matter can be orga-

---

[5] Alexander, Binaut, Borst, Estess, Fontaine, Frymier, Gaily, Gwalchmai, Hoover, Martin, McAvery, Mohler, and Roach. (*See* S. Andrus Decl. ¶ 7.)

[6] Brian Matis, Phil Mohler, Jr., James Murray, and Toby Underwood (who later told MBF he was seeking project work through another provider). (*See* S. Andrus Decl. ¶ 8.)

[7] Todd Adams, James Amos, Gregory Campbell, Jack Cochran, Tyler Hillsberg, Heath Holman, James Martin, Joseph Peters, Adam Shewey, Shannon Soileau, Edward Studer, and Phillip Zakrzewicz. (*See* S. Andrus Decl. ¶ 9.)

[8] *See* S. Andrus Decl. ¶ 9.

nized in one suit. *See Greko v. Diesel U.S.A, Inc.*, 277 F.R.D. 419, 425 (N.D.Cal. 2011) ("[T]here is no evidence that class treatment will promote immediate judicial economy, as [defendant] maintains no additional suits have been filed [against it]"); *Sandoval v. M1 Auto Collisions Ctrs.*, 309 F.R.D. 549, 562 (N.D.Cal. 2015) (holding fact that "there is no evidence that 'individual members of the prospective class have filed or threatened to file their own actions'" to "weigh against certification" under judicial economy criterion).

Under this element, certification is not needed, as there is no evidence of putative plaintiffs filing their own suit.[9]

### f. There is no Evidence that Putative Plaintiffs Lack the Financial Resources to Institute Individual Lawsuits.

In the joinder analysis, "the Court may consider the financial resources of the potential class members with regard to their ability to institute individual lawsuits" *Powell v. Tosh*, 280 F.R.D. 296, 304 (W.D.Ky. 2012), *vacated in part on other grounds on reconsideration*, 2012 U.S. Dist. LEXIS 92990 (W.D.Ky. July 5, 2012). Therefore, where—as in this case—"[p]laintiff has not presented evidence that the class members are of limited financial means, or are unable to institute individual lawsuits, * * * the Court is not willing to conclude that potential class members cannot bring their own lawsuit and assert their own claims." *Id.*; *see also Ansari v. New York Univ.*, 179 F.R.D. 112, 115 (S.D.N.Y. 1998) (factor in finding joinder not impracticable is that

---

[9] In *Wilson v. Anthem Health*, *supra*, Judge Russell applied a different meaning to "judicial economy," holding the element required consideration of "the administrative burden that multiple or aggregate claims place upon the courts" versus hearing all claims in a class action. *Id.*, **13-14. But this reading, too, does not help Plaintiff; in every instance where class certification is denied and claims and claimants are joined, the court will necessarily be dealing with more "active claimants" (i.e., those in the case through joinder) than in a class action (if considering only the named plaintiff(s) to be "active"). So under a strict reading of the interpretation of "judicial economy," joinder would *never* be practicable, which is of course not the case.

"there is no evidence that the prospective class members lack the financial resources to participate in [the named plaintiff's] lawsuit.").[10]

Not only has Plaintiff failed his burden to present any evidence that putative plaintiffs lack such financial standing, the evidence MBF offers shows quite the opposite, that putative class members do have the financial means to file their own lawsuits:

> For work from Feb. 16, 2015 through Dec. 31, 2015, MBF paid Larry Alexander $83,952.00, plus $58,755.90 in per diem and mileage;

> For work from Feb. 16, 2015 through Dec. 5, 2015, MBF paid Glynn Estess $110,505, plus $72,231 in per diem and mileage;

> For work from February 16, 2015 through Oct. 17, 2015, MBF paid Patsy Marano $67,245.06, plus $47,949.25 in per diem and mileage;

> For work from Aug. 7, 2015 through Oct. 27, 2015, MBF paid Lisa McCurry $21,172.00, plus $19,843.10 in per diem and mileage;

> For work from Apr. 6, 2015 through Dec. 15, 2015, MBF paid Justin Gailey $81,266.00, plus $56,040.05 in per diem and mileage;

> For work from Apr. 6, 2015 through Oct. 31, 2015, MBF paid Debra Blevins $50,116.00, plus $46,830.44 in per diem and mileage; and

> For work from Feb. 15, 2015 through Oct. 26, 2015, MBF paid Harry Boyington $91,082.00, plus $50,461.58 in per diem and mileage.[11]

---

[10] *Compare Jackson v. Foley*, 156 F.R.D. 538, 542 (E.D.N.Y. 1994) (factor in finding joinder impracticable is that "the majority of the class members are from extremely low income households, thereby greatly decreasing their ability to bring individual suits."); *Sherman v. Griepentrog*, 775 F.Supp. 1383, 1389 (D.Nev. 1991) (joinder found impracticable where, *inter alia*, the class "is composed of poor and elderly or disabled individuals disbursed over a wide geographical region who could not without great hardship bring multiple lawsuits.").

[11] *See* Andrus Decl. ¶ B; Ex. B. Also, MBF notes the amount of per diem and mileage paid *not* to claim they constitute "income"—which they do not—but rather to show that with MBF paying per diem and mileage amount toward putative plaintiffs' transportation, room, and board, plaintiffs were able to dedicate their income to other expenses.

These figures show that this class of putative plaintiffs do not lack the financial means to bring their own lawsuits, thus weighing heavily against joinder being found impracticable.

The "failure to affirmatively demonstrate numerosity is fatal to a plaintiff's motion for class certification under Fed.R.Civ.P. 23." *Spread Ents., Inc. v. First Data Merchant Servs. Corp.*, 298 F.R.D. 54, 72 (E.D.N.Y. 2014). This is such a case. Plaintiff cannot show impracticability of joinder. He thus fails to satisfy the numerosity requirement, and his motion for class certification should be denied.

### 2.    Commonality

Plaintiff also fails to show "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2).

This language "is easy to misread, since '[a]ny competently crafted class complaint literally raises common "questions."'" *Dukes*, 564 U.S. at 349 (quoting NAGAREDA, *Class Certification in the Age of Aggregate Proof*, 84 N. Y. U. L. REV. 97, 131-132 (2009)). In fact, "[n]ot every common question satisfies the commonality requirement; at some point of generality and abstraction almost any set of claims exhibits commonality." *Kennedy v. United Healthcare of Ohio, Inc.*, 206 F.R.D. 191, 196 (S.D.Ohio 2002) (Smith, J.) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc)). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" *Dukes*, 564 U.S. at 350, but "[t]his does not mean merely that they have all suffered a violation of the same provision of law." *Id.* "What matters to class certification * * * is not the raising of common 'questions'—even in droves—but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed

class are what have the potential to impede the generation of common answers." *Id.* (emphasis by *Dukes* Court) (quoting *Nagareda*, *supra*, at 132). Also, *Dukes* "clearly applies to wage and hour claims with equal force as it applies to cases brought under Title VII." *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 595 (S.D.N.Y. 2013), *aff'd*, 602 F. App'x 3 (2d Cir. 2015).

The lack of commonality in this case is seen through Judge Sargus's decision in *Hughes v. Gulf Interstate Field Servs., Inc.*, No. 2:14-cv-000432, 2015 U.S. Dist. LEXIS 88205 (S.D.Ohio July 7, 2015) (Sargus, C.J.). Defendant Gulf Interstate therein—just like Defendant MBF herein— "provides construction management, pipeline and facility inspection, materials management and other services for energy transportation projects" and "contracts with third-party clients to staff employees paid by Gulf Interstate on client projects," *id.* at *2.

The court conditionally certified under the FLSA employees who worked on an Ohio project under the positions of Chief Inspector, Assistant Chief Inspector, Coating Inspector, Welding Inspector, Sr. Welding Inspector, General/Utility Inspector, Tie-In Inspector, Safety Inspector, Environmental Inspector, Sr. Electrical Inspector, Electrical/Instrument Inspector, and Lead Pipe Mill Inspector. But the court then held that plaintiffs did *not* satisfy the commonality element of a Rule 23(a) class:

> At baseline, Plaintiffs contend they were subject to the same violation by Gulf Interstate as other potential class members—the failure to award overtime compensation, as required by the [Ohio Minimum Wage statutes]. Gulf Interstate responds that *individualized factual inquiries into whether each putative class member is exempt from overtime compensation requirements forecloses commonality*. For the reasons that follow, *the Court agrees.*
>
> . . . .
>
> The applicability of each of these [FLSA] exemptions

[Administrative, Executive, Combination; Highly Compensated] involves *fact-specific inquiries regarding an employee's specific job duties*—whether management, business-operations, office or non-manual etc.; the independent judgment exercised in the performance of said duties, the percentage of time devoted to each duty; and the supervisory capacity, if any, of each employee. While Plaintiffs' employee affidavits touch on the answers to some of these questions as they pertain to the individual affiants, Plaintiffs have not satisfied their burden of demonstrating that *all individuals in the proposed class would have common answers*, such that a determination of whether these exemptions apply is capable of classwide resolution. *See Hendricks v. Total Quality Logistics, LLC, et. al.*, 292 F.R.D. 529, 541 (S.D.Ohio 2013) (no commonality for Rule 23 class certification where administrative, executive and/or highly-compensated employees exemptions are at issue, "each requiring different facts to be proved" rendering it "impossible for the Court to resolve the exemption defenses in one stroke"). * * * [W]ith respect to the * * * class the Court is conditionally certifying for the purposes of the FLSA claim—*Inspectors (or equivalent positions) employed by Gulf Interstate on the Markwest Ohio Project paid a day rate—Plaintiffs have not demonstrated commonality*. The affidavits only pertain to pipeline and welding inspectors, leaving out all other types of inspectors on the Markwest Ohio Project. Plaintiffs also fail to demonstrate that the answers to these duties questions apply equally across identical job titles and are not individualized per employee.

*Id.* at **15, 17-18 (emphasis added). *See also* 29 C.F.R. § 541.2 ("A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in part.").

The within matter differs from *Hughes* in two ways, but neither helps Plaintiff. First, while the Plaintiff Hughes, unlike Plaintiff herein, sought to include chief and lead inspectors in the Rule 23 class, Judge Sargus didn't base his decision at all on the duties of non-chief or non-lead inspectors being different than those of chief or lead inspectors.

Second, while Judge Sargus based his decision on the record lacking job func-

tions for position other than pipeline and welding inspectors, that is not an issue here, as Plaintiff's Motion Exhibits 11-13 and MBF's Exhibit C collectively contain detailed descriptions of the all positions served by the putative plaintiffs—descriptions which show each position to be distinct from one another, thus showing Plaintiff cannot satisfy the commonality standard.

The diversity of functions defeating commonality is seen as follows:

Three of the putative plaintiffs worked as As-built/Materials Inspectors. They are the *only* putative plaintiffs who:

> "Maintain administrative control of all construction materials as required for construction projects";
>
> "Initiate[] purchase requisitions for critical materials as necessary to meet construction needs and contract obligations";
>
> "Supervise the procurement of materials not ordinarily procured by the Purchasing Department";
>
> "Ensure[] that all material procured meets D.O.T., OSHA and Company requirements";
>
> "Participate[] in the training of the Material Clerks";
>
> "Coordinate[] flow of material in the material delivery program and recommend[] and implement[] corrective action";
>
> "Maintain[] contact with stores, Purchasing, Design and Construction personnel as wells as outside vendors to discuss matters relating to the procurement of materials";
>
> "Verif[y] accuracy of material ordered on authorization and purchase orders to the construction drawings, and [c]orrect[] and procure[] material missed or ordered incorrectly";
>
> "Maintain[] contact with Plant Accounting regarding work order differences";
>
> "Work[] with Material Clerks regarding completion reports and unitizing of various items"; and
>
> "Ensure[] that all completion reports are received by Plant Accounting within a reasonable time after completion of a project to verify that all materials are accounted for." (Def.

Ex. C.)

Five of the putative plaintiffs worked as Environmenatl Health and Safety ("EHS") Inspectors. They are required to have "an Associate Degree (US) or College Diploma (Canada) in EHS or related field with four (4) years of relevant EHS work experience," and are the only putative plaintiffs who

> "Work with the Superintendent of Construction to iden-tify project risks";

> "Work with the Contractor to create a project-specific safety plan to cope with those risks while meeting the require-ments of company policies and regulatory guidelines";

> "Provide training to inspectors regarding the contractor safety plan and company policies";

> "Monitor compliance with the contractor safety plan and [p]erform on-site audits if needed";

> "Assist in the investigation of serious incidents to de-termine causes and develop recommendations to avoid prob-lems"; and

> "Study the effectiveness of the safety plan and suggest improvements for the current and future projects." (Def. Ex. C.)

Four of the putative plaintiffs worked as Electrical Inspectors. They are the only putative plaintiffs who must:

> "Assure that the Electrical, Communication, and In-strumentation installation on construction projects is per-formed in accordance with the Company's drawings, plans, specifications, and the Contract Documents";

> "Follow control logic in project electrical drawings and interface with existing systems"; and

> "Be familiar with interpretation of hazardous locations as defined by the N.E.C. and Company specifications and be knowledgeable of approved wiring methods for these areas," and to be "[a]ble to perform or supervise the loop checks of elec-trical construction and document information." (Def. Ex. C.)

One of the putative plaintiffs worked as a Hydro-Testing Inspector. He is the only putative plaintiff who

"Conduct[s] tests to confirm the integrity of newly constructed pipelines and re-qualify existing lines";

"Ensure[s] that all tests conform to the Company Hydrostatic Test Procedures and the approved Company Hydrostatic Test Letter";

"Ensure[s] that testing equipment (dead weights, recorders, etc.) satisfies the minimum acceptance criteria identified in the Hydrostatic Test Procedures and latest revision of applicable Company Specifications";

"Complet[es] and submit[s] applicable inspection reports that accurately describe the work performed on the project";

"Inspect[s] contractor supplied hoses, valves, fittings, etc. prior to testing to assure that materials with a low pressure rating or in poor condition are not utilized";

"Witness[es] (where applicable) initial pressurization, tight line leak test, stroke pressure plot, and the two hour no-pressure loss period";

"Prepare[s] schematic drawing of test section on all station, fabrication and fabrication pretests indicating all pertinent pipe and appurtenance data";

"Supervise[s] dewatering operations"; and

"Upon completion of each pipeline or station project, prepare[s] a Hydrostatic Test Report Booklet as described in the Hydrostatic Test Procedures." (Def. Ex. C.)

32 of the putative plaintiffs worked as Utility Inspectors or Senior Utility Inspectors. They are the only putative plaintiffs responsible for inspected a project's "right-of-way clearing and grading, ditching, stringing, and bending, coating, lowering, padding, and backfilling, road boring, tie-ins, and clean-up." (Pl. Mot. Exs. 12-13.)

Named Plaintiff Ganci and 21 of the putative plaintiffs worked as Welding Inspectors or Senior Welding Inspectors. They are the only putative plaintiffs responsible for:

"Assuring a welding procedure is established and each welder is qualified for the work he is performing";

"Observ[ing] the x-ray procedure (including developing

and handling) being used to assure it is appropriate for the applications and this procedure is producing acceptable radiograph";

"Assur[ing] the Radiographer's certifications are current and in accordance with SNC-TC-1A";

"Continuously observ[ing] the welding technique and radiographic procedure to assure proper procedures are being followed";

"Coordinat[ing] the radiographic crew's activities with those of the contractor";

"Monitor[ing] the quality of the welds being made to assure sound welds are being made at all joints";

"Assur[ing] the repairs made to correct defects in a pipe weld sufficiently corrected the defect and the weld satisfies the requirements as outlined by the appropriate codes and Company specifications";

"Assur[ing] all welding materials are of proper type and quality, * * * have been stored according to manufacturers' specifications, and [that] damaged materials are not used in the welding of the pipe";

"Monitor[ing] the quality of the radiographic film to assure that radiographs are being made which can be interpreted properly";

"Record[ing] daily weld data needed for the Weld Map"; and

Being "knowledgeable in [radiographic] film interpretation." (Pl. Mot. Ex. 11; Def. Ex. C.).

Further, many of the cases Plaintiff cites for the proposition that alleged misclassification of employees as exempt under the FLSA pass the commonality standard, do not help Plaintiff, as they—unlike this case—involve *all* class plaintiffs working in only *one* employment position. *Jacob v. Duane Reade, Inc.*, 602 F. App'x 3 (2d Cir. 2015) (all putative plaintiffs were Assistant Store Managers); *Nelson v. Avon Products, Inc.*, No. 13-cv-02276-BLF, 2015 U.S. Dist. LEXIS 51104 (N.D.Cal. Apr. 17, 2015) (all putative plaintiffs were District Sales Managers); *Rehberg v. Flowers Baking Co. of*

*Jamestown, LLC*, No. 3:12-cv-00596-MOC-DSC, 2015 U.S. Dist. LEXIS 36929 (W.D.N.C. Mar. 24, 2015) (all putative plaintiff were Distributors of defendant's products); *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632 (S.D.N.Y. 2013) (all putative plaintiffs were Store Managers); *Perez v. Allstate Ins. Co.*, No. 11-CV-1812 (JFB) (AKT), 2014 U.S. Dist. LEXIS 130214 (E.D.N.Y. Sept. 16, 2014) (all putative plaintiffs were Personal Injury Protection and Medical Payments Claims Adjusters).[12]

Finally, Plaintiffs cannot succeed on their argument that all putative plaintiffs are not exempt from the FLSA's overtime pay requirements because all share the common element of not being paid on a "salary basis." As explained in *Hughes v. Gulf Interstate Field Servs., Inc.*, No. 2:14-CV-000432, 2016 U.S. Dist. LEXIS 104115, *9 (S.D.Ohio Aug. 8, 2016), the determination whether an employee is paid on a salary basis entails a review *not* of employment agreement, but of his *pay records*, in order to see what he was actually paid:

> * * * [T]he Sixth Circuit has squarely held that "employment agreements are no longer the relevant starting point for whether an employee is paid on a salary basis. The question is therefore not what [a plaintiff] was owed under his employment agreement; rather, the question is what compensation [the plaintiff] actually received." *Orton* [*v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 846 (6th Cir. 2012)] at 848 (internal citation omitted) (citing Baden-Winterwood, 566 F.3d at 627). * * * Here, there is no dispute that Plaintiffs were actually paid the requisite amount to satisfy the FLSA's salary-basis requirement. As a result, the FLSA highly compensated exemption applies[.] * * *

*See also Rebischke v. Tile Shop, LLC*, No. 14-cv-624 (SRN/BRT), 2017 U.S. Dist.

---

[12] In *Perez v. Allstate*, the "Personal Injury Protection and Medical Payments Claims Adjusters" comprised three different titles—Staff Claims Service Adjusters, Senior Claims Service Adjusters, and Claims Service Adjusters. But *Perez* is still easily distinguishable from this case, as —regardless of which of the three titles he or she held—each plaintiff performed the same *functions*. The difference in titles applied only to the amount of money each was authorized to pay to an Allstate insured. 2014 U.S. Dist. LEXIS 130214 **5-6, 24-25.

LEXIS 10476, *14 (D.Minn. Jan. 25, 2017) ("The FLSA mandates employment *practices* whereby employees receive guaranteed salaries, not explicit employment policies to that effect. See 29 C.F.R. §§ 541.602(a) ['An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee *regularly receives* . . . a predetermined amount . . . ."]; 541.604(a) ['An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the *employment arrangement* also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis.'"]) (emphasis by *Rebischke* court).[13]

The salary basis argument can therefore not be decided on a review of a few employment agreement, but will instead require a review of the amount of payment MBF paid each putative plaintiff. Not only will this examination show each was indeed paid on a salary basis, but it involves proof that is *distinctive* to each plaintiff—rather than common among each—and thus shows Plaintiff cannot satisfy the commonality standard.

Plaintiff has thus failed to establish the necessary commonality under Fed.R.Civ.P. 23(a)(2).

### 3. Typicality

Plaintiff has also failed to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" under Fed.R.Civ.P. 23(a)(3):

> The typicality requirement * * * ensur[es] that the class
> representatives are sufficiently similar to the rest of the class—

---

[13] While Plaintiff's Rule 23 Motion was quick to criticize Judge Sargus's decision in *Hughes*, Plaintiff's Motion didn't note that the decision was directly based on the Sixth Circuit's language in *Orton*, a decision no court in this district may disregard.

> in terms of their legal claims, factual circumstances, and stake
> in the litigation—so that certifying those individuals to repre-
> sent the class will be fair to the rest of the proposed class. * * *
> This investigation properly focuses on the similarity of the le-
> gal theory and legal claims; the similarity of the individual cir-
> cumstances on which those theories and claims are based; and
> the extent to which the proposed representative may face sig-
> nificant unique or atypical defenses to her claims. * * *

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597-98 (3d Cir. 2009). *See al-*
*so McLaughlin* § 4:16 ("Frequent recitations in case law that the typicality standard
is not overly demanding should not lull practitioners into a misapprehension that it is
sufficient for the proponent of certification simply to declare that all claims arise out of
the same transaction or conduct. A finding of typicality requires an examination of the
nature of the claims brought by the putative representative and those that the absent
class members will present, and the kind of evidence that will be needed to prove those
claims.")

This necessary examination—just described in MBF's commonality argument—
shows that Plaintiff cannot satisfy typicality. The putative class comprises five jobs in
addition to that practiced by named Plaintiff Ganci, and the differences among them
just addressed above show his claim not to be "typical" of *all* class members' claims.

### 4. Adequate Representation

MBF does contest that the named Plaintiff and his legal counsel are adequate
representatives in this case.

### C. RULE 23(b)(3) FACTORS – PREDOMINANCE AND SUPERIORITY

### 1. Introduction

The initial predominance and superiority inquiry is guided by the four factors at
Fed.R.Civ.P. 23(b)(3), which are "(A) the interest of members of the class in individual-
ly controlling the prosecution or defense of separate actions; (B) the extent and nature

of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Rule 23(b)(3) "does not indicate the weight to be given to each factor or require that the action be dismissed if particular conclusions are reached as to any or all of them. Clearly, no single element is determinative." 7AA C. WRIGHT, A. MILLER & M. KANE, *FEDERAL PRACTICE AND PROCEDURE* § 1780 (3d ed.2017)

On these four factors, nothing here weighs heavily—or hardly at all—toward or against certification. But as the four factors are "nonexhaustive" (*Amchem*, 521 U. S. at 615), there is much more to explore. *See also* WRIGHT & MILLER § 1780 ("[T]he enumeration in Rule 23(b)(3) is not intended to be exhaustive. Thus, courts have considered a number of factors that are not specifically set out in subdivision (b)(3). This is as it should be. To a degree, most actions instituted under Rule 23 present some type of a challenge to the court, which means that federal judges have to be sensitive to the relevance of a wide spectrum of considerations.").

A review of the additional pertinent factors shows Plaintiff satisfies neither the predominance nor superiority factors.

## 2. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. * * * Even if Rule 23(a)'s commonality requirement may be satisfied by [a] shared experience, the predominance criterion is far more demanding." *Amchem*, 521 U.S. at 623-24. The standard requires Plaintiff prove that "questions of law or fact common to class members predominate

over any questions affecting only individual members." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). "An individual question is one where "members of a proposed class will need to present evidence that ***varies from member to member***," while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.' * * * The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Id.* (emphasis added).

As part of this inquiry, "affirmative defenses should be considered in making class certification decisions." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir. 2000); *see also Payala v. Wipro Techs., Inc.*, No. LA CV15-04063 JAK (JPRx), 2016 U.S. Dist. LEXIS 143651, *19 (C.D.Cal. Aug. 23, 2016) ("Defendants often plead affirmative defenses. Some of these defenses raise individualized issues * * *. The potentially individualized nature of affirmative defenses requires that courts consider such defenses in undertaking the predominance analysis.") (quoting NEWBERG § 4:55 (5th ed.)).

More specifically, as applied to this case, "certification is not warranted because individual issues relating to eligibility for the administrative, professional, and highly compensated employee exemptions will predominate over any questions of law or fact that are common to the class members." *In re RBC Dain Rauscher Overtime Litig.*, 703 F.Supp.2d 910, 968 (D.Minn. 2010); *see also Campbell v. PricewaterhouseCoopers, LLP*, No. Civ. S-06-2376 LKK/GGH, 2008 U.S. Dist. LEXIS 86485, **44-45 (E.D.Cal. Mar. 24, 2008) ("Where the relevant duties performed (i.e., those that arguably constitute exempt activity) vary from class member to class member, many courts have

found that individual issues, rather than common issues, predominate."); *Patel v. Nike Retail Servs., Inc.*, No. 14-cv-04781-RS, 2016 U.S. Dist. LEXIS 45588, *21 (N.D.Cal. Mar. 29, 2016) ("[I]t is well established these Labor Code exemptions often 'militate against certification' because they typically require an individualized, fact-intensive inquiry.").[14]

The same analysis MBF undertook above concerning commonality is equally applicable to the issue of predominance, and shows Plaintiff cannot satisfy this standard, most prominently because of the class engaging in six different jobs with distinctive and varying job descriptions. Plaintiff therefore cannot meet the predominance standard.

### 3.   Superiority

Plaintiff has also failed to meet Rule 23(b)(3)'s "superiority" element.

#### a.   There is no Evidence that the Amount of Each Putative Plaintiff's Claim Renders the Claim One of "Negative Value."

In *Amchem*, 521 U. S. at 617, the Court held that "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."). Under this principle, a "negative value" suit—i.e., one "in which the costs of enforcement in an individual action would exceed the expected individual recovery" (*Hurt v. Commerce Energy, Inc.*, No. 1:12-CV-00758, 2013 U.S. Dist. LEXIS 116383, *17 (N.D.Ohio Aug. 15, 2013)—is "the most compelling rationale for finding superiority in a class action." *Ba-*

---

[14] Both *Campbell* and *Patel* speak to provisions of the California Labor Code similar to the FLSA exemptions at 29 C.F.R. Part 541.

*con v. Honda of Am. Mfg., Inc.*, 205 F.R.D. 466, 487 (S.D.Ohio 2001), *aff'd*, 370 F.3d 565 (6th Cir. 2004). This tenet is famously applied in Judge Posner's much-quoted observation that "[t]he *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." *Carnegie v. Household Intl., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (emphasis in original).

The within matter, by contrast, is no $30 lawsuit. There is far more at stake here. Named Plaintiff Ganci and the putative class members seek one and one-half times their standard pay for *every hour* over 40 worked in week. Ohio Rev.Code §§ 4111.03 and 4111.10. Many worked at MBF for months or even years. (*Pl. Mot.* Ex. 6.) This is therefore not a "negative value" suit, meaning "the most compelling rationale for finding superiority in a class action" is plainly *absent* from this case. This factor thus militates significantly toward showing joinder *is* practicable.

### b. The Conflict Between the FLSA and Rule 23 Renders a Class Action not the Superior Method to Adjudicate Putative Plaintiffs' State Law Claims.

It has been held that "[t]he contrast between the FLSA's opt-in procedures and Rule 23(b)(3)'s opt-out requirement implicates the Court's superiority analysis." *Khadera v. ABM Indus., Inc.*, 701 F.Supp.2d 1190, 1195 (W.D.Wash. 2010). The conflict between the FLSA—with its "opt-in" procedure—and Federal Rule 23—with its "opt-out" procedure—and how the conflict shows a class action to not be the "superior" method of hearing the putative plaintiffs' Ohio claims, is well explained as follows:

> The next question is whether the Court should certify a class on plaintiffs' state-law claims. If certified, the class would consist of all present and former hourly employees of A-Reliable and U-Pull It, save those who decided after receiving notice to opt out of the class. * * * *[T]he case founders on the requirement that the plaintiffs show that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."* Fed.R.Civ.P. 23(b)(3). In this

case, once employees who receive notice have decided whether to opt into the FLSA class, we will have before the Court as plaintiffs all of the present and former employees who wish to pursue a claim for unpaid wages. Each of those persons then will be able to pursue on his or her own behalf state law claims, which cover the very same conduct as the FLSA claim. * * * **Because all of the companies' present and former employees will have the chance to decide whether to join the case, and because those who wish to do so will be before the Court, it makes no real sense to the Court to certify a class that will automatically include all of the employees unless they opt out.** Under these circumstances, and because of the relatively modest number of existing present and former employees, the Court sees nothing to favor the proposition that we should impose on the collective FLSA claim an overlay of a Rule 23(b)(3) state-law class. The Court therefore finds that a class action is not a superior means of resolving the state-law claims. (Emphasis added.)

*Muecke v. A-Reliable Auto Parts & Wreckers, Inc.*, No. 01 C 2361, 2002 U.S. Dist. LEXIS 11917, **5-7 (N.D.Ill. June 25, 2002). The fact that only 4 of the 66 putative plaintiffs elected to opt-in to the FLSA portion of the case shows a class action is the "superior" path for the state law claims to be pursued. *See also* ANDREW C. BRUNSDEN, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 BERKELEY J. EMP. & LAB. L. 269, 285 (2008) ("[T]he superiority of a Rule 23 class action is evaluated by reference to the available FLSA opt-in mechanism. As workers have the option to participate in the FLSA collective action, it is argued there is no need for a class action including those who lack a personal stake in the outcome."); NOAH A. FINKEL, *The Fair Labor Standards Act: Wage-and-Hour Law Class Actions: The Real Wave of "FLSA" Litigation?*, 7 EMPL. RTS. & EMPLOY. POL'Y J. 159, 171-72 (2003) ("[U]nder the FLSA's opt-in provisions, the plaintiff or plaintiffs who brought the lawsuit claiming overtime pay can send notice to all potential class members under the state law claim, advising them of their rights to join the lawsuit through the FLSA, along with a form they can return to the plaintiff counsel through which they

can choose to be represented by that counsel, usually free of charge, and assert the same overtime pay claim that they could by being an absent class member under the parallel state law. Absent special factors, it should be difficult for a plaintiff to shoulder the burden of showing that a class action is a superior device to the FLSA opt-in procedure for resolving overtime pay claims."); MATTHEW W. LAMPE AND E. MICHAEL ROSSMAN, *Procedural Approaches for Countering the Dual-Filed FLSA Collective Action and State-Law Wage Class Action*, 20 THE LABOR LAWYER 311, 333-34 (2005) ("In dual-filed actions, the section 216(b) opt-in procedure, when its prerequisites are satisfied, not only provides a simple, congressionally mandated mechanism by which persons can participate in wage cases, it also provides concrete data as to the number of persons who actually *want* to join a given action. In this setting, arguments that * * * an FRCP 23 class extending beyond this self-defined group is a superior method of proceeding, are counterintuitive.") (emphasis in original);

A class action involving 66 opt-out plaintiffs is thus not superior to those plaintiffs bringing individual claims, where 62 of the 66 have elected not to participate in this case in the first place.

### c. The Availability of Attorneys' Fees Renders a Class Action not Superior.

R.C. 4111.10(A) provides that attorneys' fees, though not automatically awarded to a successful plaintiff, are nonetheless available, i.e., the plaintiff can recover "costs and reasonable attorney's fees as may be allowed by the court."

This weighs against finding a class action superior; as held by the Sixth Circuit, "the primary justification for class treatment of these claims is largely absent in this case because the [Equal Credit Opportunity Act's] ***provision for the award of attorney's fees and costs to successful plaintiffs eliminates any potential finan-***

*cial bar to pursuing individual claims*." *Coleman v. GMAC*, 296 F.3d 443, 449 (6th Cir. 2002) (emphasis added). The court in *Molina v. Roskam Baking Co.*, No. 1:09-cv-475, 2011 U.S. Dist. LEXIS 136460, **16-17 (W.D.Mich. Nov. 29, 2011) set forth the Circuit's position as follows:

> \* \* \* *[D]istrict courts within the Sixth Circuit have concluded that the presence of such fee-shifting provisions weigh against class certification, in that the financial barrier to bringing suit is eliminated.* See *Abby v. City of Detroit*, 218 F.R.D. 544, 549 (E.D.Mich. 2003) (finding the fee-shifting provisions of 42 U.S.C. § 1988 weigh against class certification); *Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576, 583 (S.D.Ohio 1993) (declining to certify class of consumers in action seeking rescission under Truth in Lending Act where statute authorizes award of attorney fees); *Cancino v. Yamaha Motor Corp.*, No. 3:04-cv-274, 2010 U.S. Dist. LEXIS 76645, 2010 WL 2607251, at \*17 (S.D.Ohio 2010) (declining to certify class of consumers where the plaintiffs asserted three statutory claims that provide for an award of attorney's fees); *Carter v. Welles-Bowen Realty, Inc.*, No. 3:05-cv-7427 et al., 2010 U.S. Dist. LEXIS 22476, 2010 WL 908464, at \*2 (N.D.Ohio 2010) (finding that the fee-shifting and treble damages provisions of the Real Estate Settlement Procedures Act preclude a finding of superiority under Rule 23(b)(3)). The Court concludes that the FCRA's provision for the award of attorney's fees and costs to successful plaintiffs similarly furnishes an adequate incentive for individual plaintiffs to bring these types of claims. (Emphasis added.)

*See also* NEWBERG § 4:65 ("To gauge the costs of individual suits for comparative purposes, courts may look to multiple factors including the complexity of the underlying substantive law, the litigiousness of the defendant, and *the ability of plaintiffs to recover attorney's fees under the relevant statute*.") (emphasis added).

The availability of attorneys' fees to claimants under Ohio Rev.Code 4111.10 shows a class action is not a superior method of bringing claims under Ohio Rev.Code 4111.03.

### d. The Possible Preclusive Effect of a Judgment in a Certified Class Case Might Unfairly Abolish the

## Rights of the 62 Putative Plaintiffs who did not
## Opt-in to the FLSA Portion of the Case.

The court in *Woodard v. FedEx Freight East, Inc.*, 250 F.R.D. 178, 186 (M.D.Pa. 2008) noted that "the maintenance of the FLSA claim and parallel state law claim in the same action, where both claims are predicated on the same conduct of the defendant, poses a significant risk that employees, who neither opt in to the FLSA collective action nor opt out of the state law class action, will be collaterally estopped from asserting FLSA claims in their own right." *See also Chase v. AIMCO Props., L.P.*, 374 F.Supp.2d 196, 202 (D.D.C. 2005) ("Allowing plaintiffs to proceed with a state-law class action here would confound Congress' design for the collective action and inject unacceptable complexities into the management of the case. An AIMCO service technician with notice of her right to opt in to the FLSA claim and to opt out of the state class action might reasonably decide not to respond to the notice—but then she would be a party in the class action and not a party in the collective action. A judgment in the class action might operate to preclude her from pursuing an FLSA claim on her own, a result plainly at odds with Congress's intent to allow workers to preserve FLSA claims by declining to opt in."); RACHEL K. ALEXANDER, *Federal Tails and State Puppy Dogs: Preempting Parallel State Wage Claims to Preserve the Integrity of Federal Group Wage Actions*, 58 AM. U. L. REV. 515, 538-39 (2009) ("[A] primary concern in allowing state-law wage claims that parallel the FLSA is that any settlement or judgment may preclude claimants who did not opt in to the FLSA group from pursuing those FLSA claims at a later date. A number of courts examining the propriety of dual-filed § 216(b)/Rule 23 actions have addressed preclusion of an individual's FLSA claims even when he or she does not opt in to the collective action. Many of these courts have determined that when there exists a Rule 23 class on a state-law wage is-

sue parallel to the FLSA, an individual who does not opt out of the state-law class will automatically have his or her FLSA claims adjudicated even if (1) he or she does not opt in to the FLSA class or (2) the action does not contain an FLSA claim."); *id.* at 540 (noting "the general inequities involved in having one's federal wage claim precluded from later adjudication, despite not having consented to participate in the FLSA collective action"); DANIEL C. LOPEZ, *Collective Confusion: FLSA Collective Actions, Rule 23 Class Actions, and the Rules Enabling Act*, 61 HASTINGS L.J. 275, 306 (2009):

> [T]he preclusive effects of Rule 23 essentially eliminate the employee's FLSA claim in all but one far-fetched situation: where the employee affirmatively opts out of the class action and does not opt in to the collective action. However, in the more realistic circumstance that the employee ignores the notice form (effectively joining the class action but not the collective action), he or she might be bound by the entire hybrid action judgment even though he or she did not opt-in to the collective action. In a large-scale hybrid action, this very real "inertia" risk could potentially result in countless employees losing their once-protected FLSA opt-in claims. Alternatively, even if res judicata does not wholly bar subsequent suits * * *, collateral estoppel could foreclose future claims. For example, if the state law and FLSA wage regulations were identical in the initial hybrid action, collateral estoppel would likely bar decisive overtime pay issues in a subsequent FLSA suit. Crucially, either preclusion scenario potentially threatens plaintiffs' due process rights: their statutorily guaranteed FLSA opt-in claims are jeopardized by the state-law class action. If courts choose to allay these problems and simply allow plaintiffs to bring FLSA claims after a hybrid action was decided on the merits, Rule 23 would be stripped of its preclusive power and the class action's judicial economy would be lost."

This same risk applies here. If a class action is allowed, a great risk exists that a judgment in this case will wrongly preclude the 62 of the 66 putative plaintiffs who did not opt-in to the FLSA claims from ever pursuing those claims. This shows a class action is not the "superior" means for advancement of the Ohio claims.

Plaintiff therefore cannot satisfy the superiority standard.

### III.   CONCLUSION

For these reasons, Defendant MBF Inspection Services, Inc. requests the court

deny Plaintiff's Motion for Class Action Certification Under Fed.R.Civ.P. 23.

Respectfully submitted,

**LANE ALTON**

/s/ Eric S. Bravo
JOSEPH A. GERLING       (0022054)
CHRISTOPHER R. PETTIT   (0069926)
ERIC S. BRAVO           (0048564)
Two Miranova Place, Suite 220
Columbus, Ohio 43215
Telephone: (614) 228-6885
Facsimile: (614) 228-0146
Email: jgerling@lanealton.com
         cpettit@lanealton.com
         ebravo@lanealton.com
CHRISTOPHER P. WESIERSKI*
WESIERSKI & ZUREK LLP
One Corporate Park, Suite 200
Irvine, California 92606
Telephone: (949) 975-1000
Facsimile: (949) 756-0517
Email: cwesierski@wzllp.com
*Admitted Pro Hac Vice*

*Attorneys for Defendant MBF Inspection
Services, Inc.*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing
has been filed on this 26th day of May, 2017 through the Court's ECF system, and
served upon all counsel of record who participate in the Court's ECF system.

/s/ Eric S. Bravo
ERIC S. BRAVO
*Attorney for MBF Inspection Services,
Inc.*