UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THOMAS GANCI,

          **Plaintiff,**

    **v.**                            **Case No.: 2:15-cv-2959**
                                             **JUDGE GEORGE C. SMITH**
                                             **Magistrate Judge Chelsey M. Vascura**

MBF INSPECTION SERVICES, INC.,

          **Defendant.**

## <u>OPINION AND ORDER</u>

This matter is before the Court upon Plaintiff Thomas Ganci's Motion for Class Certification of claims brought under the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code Chapter 4111, *et seq.* for unpaid overtime wages.  (Doc. 60).  The motion is fully briefed and ripe for disposition.  For the following reasons, Plaintiff's Motion is **GRANTED**.

## I.      BACKGROUND

Defendant MBF Inspection Services, Inc. ("MBF") is a New Mexico corporation that provides inspection services to its customers in the oil and gas industries in various states across the country.  (Doc. 6, Ans. ¶¶ 10–12).  Plaintiff worked for MBF as a welding inspector from approximately June 2015 to October 2015.  (Doc. 60-5, Ganci Decl. ¶ 4).  He is a Texas resident but lived and worked in Ohio while under the employment of MBF.  (*Id.* ¶ 2).  During his time of employment, he provided inspection services for MBF's customers and routinely worked in excess of forty hours per week.  (*Id.* ¶¶ 5, 10).  Plaintiff was paid on a day-rate basis and did not receive overtime compensation for time worked in excess of forty hours per week.  (*Id.* ¶¶ 9, 10).

On October 30, 2015, Plaintiff filed the present action seeking class relief under both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code Chapter 4111, *et seq.* ("Fair Wage Act").  (Doc. 1, Complaint).  On November 24, 2015, MBF filed its Answer asserting as affirmative defenses that MBF inspectors like Plaintiff were exempt from federal and state overtime laws under the executive, administrative, professional, and highly compensated exemptions.  (Doc. 6, 25th Affirmative Defense).

This Court previously conditionally certified a collective action under the FLSA encompassing the following class:

> All inspection personnel and those similarly situated who were paid a day rate and who worked for Defendant at any time since three years prior to this Court's order granting conditional certification.

(Doc. 26 at 2).  MBF did not contest the conditional certification of the collective action.  (*Id.*). Plaintiff then distributed Court-approved notice of the FLSA collective action to potential members of the collective action class.  The FLSA notice period has closed, and a total of 56 inspectors who worked for MBF around the country have filed consent forms to join the FLSA collective action.  (Doc. 60-2, Baggio Decl. ¶ 2).

Plaintiff now seeks to certify as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) the following class of individuals who allegedly have claims against MBF under Ohio's Fair Wage Act:

> All inspection personnel, other than chief inspectors and lead inspectors, who were paid a day rate and who worked for Defendant under a Spectra contract at any time since three years prior to filing of this Complaint.

(Doc. 60, Mot. for Class Certification).  During discovery, MBF produced a list of inspection personnel who worked in Ohio during the proposed class period.  (Doc. 60-8, Class List).  The

2

list identifies 67[1] personnel falling within Plaintiff's proposed Rule 23 class definition.  (Doc. 60-2, Baggio Decl. ¶ 3).  Of those 67 individuals, five consented to join the FLSA collective action.  (*Id.* ¶ 4).

## II.    CLASS CERTIFICATION STANDARD OF REVIEW

Federal Rule of Civil Procedure 23(a) provides that class action lawsuits may be certified if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4).  In addition to the four requirements set forth in Rule 23(a), the party seeking certification must also demonstrate that it satisfies at least one of the subcategories of Rule 23(b).  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).  Here, Plaintiff has moved for certification pursuant to Rule 23(b)(3), which dictates that a class action may proceed when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

District courts have broad discretion in certifying class actions so as long as they exercise such discretion within the framework of Rule 23.  *Coleman v. Gen. Motors Acceptance Corp.*,

---

[1] Doc. 60-8 appears to be a list of all MBF personnel who worked in Ohio during the relevant time period and includes 97 unique individuals.  Not all of these individuals appear to have worked as inspectors, and many appear to have worked as chief or lead inspectors who are excluded from the proposed Rule 23 class.  Neither party has clarified for the Court exactly which individuals listed in Doc. 60-8 would fall within the class, and the briefing variously refers to the proposed class as comprising 66, 67, or 68 members.  Nonetheless, for the purposes of the present motion, the Court is satisfied that the proposed class consists of no more than 68 individuals.

296 F.3d 443, 446 (6th Cir. 2002).  However, a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).  While the plaintiff's likelihood of ultimate success of his or her claims on the merits is not one of the elements of the "rigorous analysis," "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

### III.    DISCUSSION

Plaintiff seeks class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3) of his Ohio Fair Wage Act claims for unpaid overtime wages.  The Court will briefly address the proposed class definition and then analyze each of the requirements of Rule 23(a) and Rule 23(b)(3).

### A.    Class definition

The class definition proposed by Plaintiff ("All inspection personnel, other than chief inspectors and lead inspectors, who were paid a day rate and who worked for Defendant under a Spectra contract at any time since three years prior to filing of this Complaint") does not on its face limit the class to those inspectors who worked in Ohio.  However, Plaintiff seeks to certify this class only for his Ohio Fair Wage Act claims, and the Complaint specifies that Plaintiff brings the putative Rule 23 class action "on behalf of all similarly situated individuals within the State of Ohio."  (Doc. 1, Complaint ¶ 26).  Moreover, both parties in their briefing refer to the proposed class as comprising only those inspectors who worked in Ohio.  (Doc. 60-1, Pl.'s Mem. in Supp. at 1; Doc. 69, Def.'s Mem. in Opp. at 10; Doc. 60-8, Class List).  The Court therefore construes Plaintiff's motion to seek certification of the following amended class definition:

4

All inspection personnel, other than chief inspectors and lead inspectors, who were paid a day rate and who worked for Defendant *in Ohio* under a Spectra contract at any time since three years prior to filing of this Complaint.

**B.      Rule 23(a) Requirements**

**1.      Numerosity**

Class certification is not appropriate unless the class is so numerous as to render joinder of all members impracticable. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012); Fed. R. Civ. P. 23(a)(1). "There is no strict numerical test for determining impracticability of joinder," *Am. Med. Sys*, 75 F.3d at 1079, but courts routinely hold that "a class of 40 or more members is sufficient to meet the numerosity requirement." *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 487 (S.D. Ohio 2014) (Marbley, J.).

Beyond sheer numbers, Rule 23(a)(1) requires that joinder be "impracticable," an inquiry that "requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. v. EEOC,* 446 U.S. 318, 330 (1980). The plaintiff is not required to "establish that it is impossible to join all members of the proposed class[,]" but simply that joinder "would be difficult and inconvenient." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012) (Black, J.) (quoting *Day v. NLO,* 144 F.R.D. 330, 333 (S.D. Ohio 1992) (Spiegel, J)). Practicability of joinder is informed by "ease of identifying members and determining addresses, ease of service on members if joined, and geographical dispersion among other things." *Turnage v. Norfolk S. Corp.*, 307 F. App'x 918, 921 (6th Cir. 2009).

Here, the parties are in agreement that the proposed class numbers approximately 67 individuals. While this number is larger than the 40-member rule of thumb, MBF argues that joinder would nevertheless be easily accomplished because MBF has produced the names and contact information of all 67 members of the class. Class members are therefore already identified and could easily be served if joined as named plaintiffs. MBF also asserts that, based

5

on the wages it paid potential class members, inspectors do not lack resources to bring their own individual suits.  Finally, MBF argues that judicial economy concerns are not implicated when there is no indication that a multiplicity of suits is imminent.

### a. Ease of identifying and serving class members

While MBF is inarguably correct that that "where class members may be easily identified, joinder is…more practicable," *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 182 F.R.D. 523, 530 n.15 (N.D. Ohio 1998), this does not end the Court's inquiry. None of the cases (save one) relied on by MBF in making this argument address an important mitigating factor raised by Plaintiff: employees' fear of their employer's retaliation for pursuing wage and hour claims individually.

This District has recognized that litigating against one's employer is an inherently fraught proposition that may discourage class members from either opting in to an FLSA collective action or asserting their state law wage and hour claims on an individual basis.  Thus, even when class member identities are easily determined from employee rosters, joinder is often nevertheless impracticable.  *Swigart*, 288 F.R.D. at 183 ("In employment class actions like this one, a class member's potential fear of retaliation is an important consideration in deciding whether joinder is impracticable and thus whether the numerosity requirement is satisfied."); *Castillo*, 302 F.R.D. at 487 (finding joinder impracticable in an employment class action where "the non-trivial fear of reprisal and posture of economic dependency . . . would likely repress the willingness of the class members to bring suit individually"); *Myers v. Marietta Mem'l Hosp.*, No. 2:15-CV-2956, 2017 WL 3977956, at *3 (S.D. Ohio Sept. 11, 2017) (Marbley, J.) (finding joinder impracticable due to retaliation concerns).

These decisions have cited with approval similar cases from outside this Circuit.  *See, e.g.*, *Ladegaard v. Hard Rock Concrete Cutters, Inc.,* 2000 WL 1774091, at *4 (N.D. Ill. Dec. 1,

6

2000) (finding in an employment class action that joinder was impracticable due to "[t]he possibility of retaliation" and the "economic dependency involved in the employment relationship [which] is inherently inhibiting" and which is not cured by "the availability of the FLSA action"); *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 163 (S.D.N.Y. 2008) ("Indeed, it may be that in the wage claim context, the opt-out nature of a class action is a valuable feature lacking in an FLSA collective action, insofar as many employees will be reluctant to participate in the action due to fears of retaliation."); *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011) ("[A]n employee fearful of retaliation or of being 'blackballed' in his or her industry may choose not to assert his or her FLSA rights."). *See also Sanft v. Winnebago Indus., Inc.,* 214 F.R.D. 514, 524 (N.D. Iowa 2003) (compiling cases holding Rule 23's numerosity requirement satisfied because, where some class members are still employed by the defendant, "concern regarding employer retaliation or reprisal renders individual joinder less practicable").

In *Kennedy v. Virginia Polytechnic Inst. & State Univ.*, cited by MBF, the court dismissed fear of retaliation as a significant factor because the plaintiff had not offered any evidence that potential class members would join but for the potential for employer reprisal. (No. 7-08-CV-00579, 2010 WL 3743642, at *4 (W.D. Va. Sept. 23, 2010)).  However, this District has not required a showing of actual fear of reprisal in order to find joinder impracticable.  *Swigart*, 288 F.R.D. at 183; *Castillo*, 302 F.R.D. at 487.  Rather, as recognized by the *Ladegaard* court, the employment relationship is "inherently inhibiting."  2000 WL 1774091 at *4.  The low opt-in rate among putative class members (5 out of 67) is itself consistent with fear of reprisal.  Moreover, in reply, Plaintiff offered evidence that at least one MBF management employee had suggested to inspectors that MBF should not hire for future

7

assignments any inspectors who joined the FLSA collective action. (Doc. 75-2, Cease and Desist Letter).[2] The Court therefore finds that the ease of identifying and serving class members is outweighed by inspectors' concerns for their job security.

### b. Class members' financial resources

Fear of retaliation also informs analysis of the class members' financial resources to bring individual suits. That is, even assuming *arguendo* that their wages are sufficient to absorb the cost of litigation itself, their present resources will often be insufficient to absorb a loss of future employment, making inspectors unlikely to assert their claims on an individual basis. Thus, this factor also does not weigh against the impracticability of joinder.

### c. Judicial economy

Finally, MBF is correct that there is no apparent threat of a multiplicity of suits, and therefore class treatment is not necessary to safeguard judicial economy. However, judicial economy alone is not dispositive of the numerosity analysis. The Court finds that, as a whole, Plaintiff has shown that joinder of individual claims is sufficiently impracticable to satisfy Rule 23(a)'s numerosity criterion.

### 2. Commonality

Under Rule 23(a)(2), a plaintiff must show that "there are questions of law or fact common to the class." *Davis v. Cintas Corp.*, 717 F.3d 476, 487 (6th Cir. 2013); Fed. R. Civ. P. 23(a)(2). "Although Rule 23(a)(2) speaks of 'questions' in the plural, [the Sixth Circuit has] said that there need only be one question common to the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). But not just any common question will suffice; the common

---

[2] Although this letter contains more than one level of hearsay, MBF has not moved to strike it and has therefore waived any objection to the Court's consideration of the letter at the class certification stage. And "[i]n any event, courts have held that on a motion for class certification, the evidentiary rules are not strictly applied and courts can consider evidence that may not be admissible at trial." *Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578, 582 (W.D. Mich. 2001).

questions must be capable of "generat[ing] common answers that are likely to drive resolution of the lawsuit." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013).

Plaintiff has met this requirement. Plaintiff's proposed Rule 23 class litigation centers on his claim that MBF failed to pay overtime wages to its inspectors in violation of the Fair Wage Act and the FLSA. MBF asserts as affirmative defenses that the inspectors are exempt from statutory overtime requirements under the executive, professional, administrative, and highly compensated exemptions. (Doc. 6, Ans.). As explained below, Plaintiff has sufficiently demonstrated that the inspectors' duties relevant to these exemptions were common to all putative class members, and therefore, that questions as to the exemptions' applicability can be resolved in "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

### a. Executive exemption

Employees who work in a bona fide executive capacity are exempt from overtime provisions under the FLSA and the Fair Wage Act. 29 U.S.C.A. § 213(a)(1); Ohio Rev. Code § 4111.03. Federal regulations further explain that the executive exemption covers those (1) who are compensated on a salary basis of not less than $455 per week, and (2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) who customarily and regularly directs the work of two or more other employees; and (4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100.

MBF's corporate representative testified at deposition that none of MBF's inspectors supervise other MBF employees or provide advice as to hiring, firing, or other employee status changes. (Doc. 60-4, Daniels Dep., PAGEID #438). Nor did MBF's representative indicate that

these duties vary by inspector discipline or any other variable.  (*Id.*).  The Court therefore finds that the question of whether the putative class members' job duties fall within the FLSA's executive exemption is a common question susceptible of classwide proof.

### b. Professional exemption

The FLSA and the Fair Wage Act also exempt employees who work in a bona fide professional capacity from overtime protections.  29 U.S.C.A. § 213(a)(1); Ohio Rev. Code § 4111.03.  Federal regulations further explain that the professional exemption covers those (1) who are compensated on a salary basis of not less than $455 per week, and (2) whose primary duty is the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialize knowledge or instruction.  29 C.F.R. §§ 541.300, 541.301(a).

The advanced knowledge required by the second prong of the professional exemption test is knowledge which is "customarily acquired by a prolonged course of specialized intellectual instruction."  29 C.F.R. § 541.300.  "Specialized academic training is a standard prerequisite" for professional positions and "possession of the appropriate academic degree" is "the best prima facie evidence" that the employee meets this criterion.  *Id.*  The requirement that the employee's knowledge be from a field of science or learning serves to distinguish professions such as "law, medicine, theology, accounting, actuarial computation, engineering, architecture, teaching, various types of physical, chemical and biological sciences, pharmacy and other similar occupations that have a recognized professional status" from "the mechanical arts or skilled trades where in some instances the knowledge is of a fairly advanced type, but is not in a field of science or learning."  29 C.F.R. § 541.301(c).  The professional exemption is also inapplicable to "occupations in which most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction."  29 C.F.R. § 541.301(d).

In this case, when questioned at deposition about any advanced knowledge required of the inspectors making up the putative class, MBF's corporate representative testified that no specific level of education is required. (Doc. 60-3, Robertson Dep., PAGEID #422). Nor did MBF's representative indicate that educational requirements vary by inspector discipline or any other variable. (*Id.*). This is borne out by the job descriptions of Welding Inspector, Utility/Craft Inspector, Electrical Inspector, and EHS (Environmental Health and Safety) Inspector submitted with the parties' briefing, each of which require certain levels of relevant "experience" but contain no advanced academic requirements.[3] (Docs. 60-13, 60-15, 69-3).

The Court therefore finds that MBF treated its inspectors uniformly as to factors relevant to the professional exemption. The question of whether the putative class members' qualifications fall within the FLSA's professional exemption is thus a common question susceptible of classwide proof.

### c. Administrative exemption

The FLSA and Fair Wage Act provide a third exemption from their overtime provisions for administrative employees. 29 U.S.C.A. § 213(a)(1); Ohio Rev. Code § 4111.03. This exemption is available for employees (1) who are compensated on a salary or fee basis at a rate of not less than $455 per week, and (2) whose primary duty is "the performance of work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. §§ 541.200(a), 541.201(a). To meet the second prong of this test, "an employee must perform work directly related to assisting with the running or servicing of the

---

[3] EHS Inspectors are required to hold "an Associate Degree (US) or College Diploma (Canada) in EHS or related field" in addition to four years of relevant EHS work experience. (Doc. 69-3, PAGEID #698). However, an associate degree is insufficient to qualify for the professional exemption. *See* Fair Labor Standards Act Opinion Letter 2007-17, 2008 WL 5483057, at *2 ("Occupations that require only a four-year degree in any field or a two-year degree as a standard prerequisite for entrance into the field . . . do not qualify for the learned professional exemption."); 29 C.F.R. § 541.301(e)(7) (stating that paralegals holding only two-year associate degrees do not qualify for the professional exemption).

business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." *Id.* The Sixth Circuit has stated that "the focus is on whether an employee helps run or service a business—not whether that employee's duties merely touch on a production activity." *Lutz v. Huntington Bancshares, Inc.*, 815 F.3d 988, 995 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 96 (2016).

Here, MBF's business is the provision of inspection services. MBF's corporate representative testified at deposition that the inspectors making up the putative class typically spend approximately 98 percent of their working time in the field, performing those inspection services, as opposed to office work. (Doc. 60-3, Robertson Dep., PAGEID #428). MBF's corporate representative also stated that the division of time between field and office work varies from project to project, and that there would be no way to tell from the inspectors' time sheets whether a particular hour was spent in the field or in the office. (*Id.*, PAGEID #427-28). However, the Court is satisfied that if 98 percent of inspector work is typically spent in the field providing the inspection services that make up MBF's business, the inspectors' primary duties with regard to the applicability of the administrative exemption is a common question that can be determined with classwide proof.

### d. Highly compensated exemption

The highly compensated employee exemption applies where (1) an employee makes at least $100,000 annually,[4] including at least $455 per week on a salary basis, and (2) the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee. 29 C.F.R.

---

[4] As of December 1, 2016, the annual compensation amount was increased to $134,004; however, the earlier version of the regulation is applicable to this case filed in 2015. 29 C.F.R. § 541.601(b).

§ 541.601(a).   The exemption "applies only to employees whose primary duty includes performing office or non-manual work."  29 C.F.R. § 541.601(d).

As stated above, MBF's corporate representative testified that typically only two percent of inspector work is office or non-field work.  (Doc. 60-3, Robertson Dep., PAGEID #428).  And again, although MBF stated this percentage could vary from project to project, MBF's testimony makes clear that inspectors perform the overwhelming majority of their work in the field.  The Court is therefore satisfied at this juncture that the primary duties of the inspectors in regard to the highly compensated exemption pose a common question susceptible to classwide proof.

### e.   Differences in job duties do not automatically defeat commonality

MBF spends several pages of its opposition brief listing job duties that are unshared among the various discipline-specific inspectors, arguing that these differences require individualized inquiries that preclude the Court from resolving exemption issues with classwide proof.  (Doc. 69, Def.'s Mem. in Opp. at 17–20).  *See also Hughes v. Gulf Interstate Field Servs., Inc.* ("*Hughes I*"), No. 2:14-CV-000432, 2015 WL 4112312, at *5 (S.D. Ohio July 7, 2015) (Sargus, C.J.) (holding that "individualized factual inquiries into whether each putative class member is exempt from overtime compensation requirements forecloses commonality."); *Hendricks v. Total Quality Logistics, LLC*, 292 F.R.D. 529, 541 (S.D. Ohio 2013) (Dlott, C.J.) ("With all three exemptions in play, each requiring different facts to be proved, it will be impossible for the Court to resolve the exemption defenses in one stroke.").

But it was not differences in job duties alone that prevented the *Hughes I* and *Hendricks* plaintiffs from establishing commonality; it was differences in job duties *with respect to the factors relevant to the exemption analyses*.   In *Hendricks*, the defendant "submitted evidence demonstrating that the answers to these questions [as to various FLSA exemptions] may vary from one [class member] to the next, especially with regard to how [class members]

spend their time in relation to the exemptions at issue, how and when they exercise discretion in carrying out their duties, their authority to hire or fire, and whether they direct the work of other employees." 292 F.R.D. at 540-41. Similarly, in *Hughes I*, the plaintiffs submitted employee affidavits describing their job duties from only a small number of the multiple employee categories at issue. 2015 WL 4112312 at *5. While these affidavits "touch[ed] on the answers" to some of the questions relevant to various FLSA exemptions "as they pertain to the individual affiants," the plaintiffs were unable to demonstrate that "all individuals in the proposed class would have common answers." *Id.* at *6.

Here, MBF has not explained how the unshared job duties it lists would affect the Court's analysis of the FLSA exemptions as applied to the putative class, or how they rebut the evidence of uniformity in relevant job duties offered by Plaintiff. Variations in job duties are of no moment to commonality if they are unrelated to the elements of the parties' claims and defenses. As MBF has not identified any relevant factors that vary meaningfully from class member to class member, the Court will be able to determine whether the inspectors' job duties fall within any of the exemptions on a classwide basis without resorting to individual inquiries. Thus, these questions as to the inspectors' exemption status are common questions capable of "generat[ing] common answers that are likely to drive resolution of the lawsuit." *In re Whirlpool Corp.*, 722 F.3d at 852.

Finally, the Court notes for clarity that it is not at this time determining whether any of the FLSA exemptions apply to any particular member of the putative class or the class as a whole. Rather, on the record now before it, the Court concludes only that Plaintiff has offered sufficient evidence that MBF treated the putative class of inspectors uniformly with regard to

certain elements of those exemptions, such that applicability of the exemptions can later be determined at least in part through classwide proof.

### 3. Typicality

Rule 23(a)(3) requires that "the claims . . . of the representative parties be typical of the claims . . . of the class." "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc*., 511 F.3d 554, 561 (6th Cir. 2007). In other words, typicality is satisfied if the class members' claims are "fairly encompassed by the named plaintiffs' claims." *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 399 (6th Cir.1998) (en banc) (quoting *Am. Med. Sys.,* 75 F.3d at 1082). "This requirement insures that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *Whirlpool Corp.*, 722 F.3d at 852–53.

The concepts of commonality and typicality "tend to merge" in practice because they both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes,* 564 U.S. at 349 n.5 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157-58 n. 13 (1982)).

Consistent with this merging, both parties support their typicality arguments by incorporating their submissions on commonality. (Doc. 75, Reply at 12; Doc. 69, Mem. in Opp. at 23). The Court agrees with Plaintiff that he and the putative class have suffered the same alleged injury (misclassification as exempt employees, resulting in unpaid overtime wages). Plaintiff's showing of questions common to the class (*i.e.*, the applicability of the FLSA

exemptions that go to the heart of Plaintiff's claims and MBF's defenses) therefore satisfies Plaintiff's burden of demonstrating that the class's claims are "fairly encompassed by the named plaintiffs' claims." *Sprague,* 133 F.3d at 399.

### 4. Adequacy

Rule 23(a)(4) allows certification only if "the representative parties will fairly and adequately protect the interests of the class." "This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members." *Am. Med. Sys.,* 75 F.3d at 1083. Class representatives must meet two criteria to satisfy adequacy: "(1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Id.*

MBF does not contest that Plaintiff and his legal counsel are adequate representatives of the putative class. (Doc. 69, Mem. in Opp. at 23). The Court also finds that Plaintiff's interests, in seeking unpaid overtime wages resulting from alleged misclassification as an exempt employee in violation of the FLSA and the Fair Wage Act, align with those of the class, who seek the same remedy arising from the same alleged statutory violation. There is no evidence of any conflict of interest that would prevent Plaintiff from fairly and adequately representing the interests of the class. Additionally, Plaintiff's counsel has submitted a "firm resume" documenting extensive experience as class counsel in wage and hour litigation, demonstrating that Plaintiff's counsel is able to fairly and adequately represent the interests of the class. (Doc. 60-16). The Court therefore finds that Plaintiff has satisfied Rule 23's adequacy requirement.

## C. Rule 23(b)(3) Requirements

To certify a class under Rule 23(b)(3), the Court must find both that (1) questions of law or fact common to class members predominate over any questions affecting only individual

16

members and (2) class treatment is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). As the Advisory Committee's Notes of 1966 indicate, the purpose of Rule 23(b)(3) is to "achieve economies of time, effort, and expense, and promote, uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results" where other provisions of Rule 23(b) are not applicable.

### 1.    Predominance of common questions

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young*, 693 F.3d at 544 (quoting *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352–53 (6th Cir. 2011)). "Plaintiffs need not prove that every element can be established by classwide proof." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017) (citing *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016), *cert. denied*, No. 16-1336, 2017 WL 1807143 (Oct. 2, 2017)). But the key is to "identify[ ] the substantive issues that will control the outcome," in other words, courts should "consider how a trial on the merits would be conducted if a class were certified." *Sandusky Wellness Ctr.*, 863 F.3d at 468, (quoting *Gene & Gene, LLC v. BioPay, LLC*, 541 F.3d 318, 326 (5th Cir. 2008)). "[T]he fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Young*, 693 F.3d at 544 (quoting *Beattie*, 511 F.3d at 564 (6th Cir. 2007)).

As discussed in regard to commonality, Plaintiff has identified multiple questions whose answers will be common to all class members (*i.e.*, whether inspectors' duties fall within the bounds of various FLSA exemptions). The one issue raised by MBF for which individual inquiries may plausibly be required relates to an element common to all of the relevant FLSA exemptions: the salary basis requirement.

In addition to the duties outlined *supra*, the executive, administrative, professional, and highly compensated exemptions from the FLSA and Fair Wage Act overtime provisions each require that the employee in question be compensated "on a salary basis of not less than $455 per week." 29 C.F.R. §§ 541.100 (executive exemption), 541.200, (administrative exemption), 541.300 (professional exemption), 541.601 (highly compensated exemption). The "salary basis" requirement is met if the employee "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). "An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business." *Id.*

The parties dispute whether individual inquiries will be necessary to determine whether MBF paid each inspector on a salary basis. Plaintiff argues that MBF's deposition testimony establishes the MBF uniformly paid its inspectors on a "day rate" basis for each day worked, which is inconsistent with the "weekly or less frequent basis" aspect of the salary basis requirement. Therefore, according to Plaintiff, the salary basis issue can be determined through classwide proof. (Doc. 60-1, Pl.'s Mem. in Support at 18–19). In support of this argument, Plaintiff cites a case from the Western District of Texas. *Keen v. DXP Enterprises, Inc.*, 2016

WL 3253895, at *4 (W.D. Tex. June 6, 2016).  The *Keen* court determined that an individual plaintiff's day rate compensation did not satisfy the FLSA's salary basis requirement where the plaintiff worked only on an as-needed basis.  *Id.*

However, as pointed out by MBF, this District has recently held that day rate compensation can satisfy the salary basis test if the employee in fact received weekly compensation of at least $455, regardless of whether the compensation was calculated per day or per week.  *Hughes v. Gulf Interstate Filed Servs., Inc.* ("*Hughes II*"), 2016 WL 4197596, at *1 (S.D. Ohio Aug. 8, 2016) (Sargus, C.J.).  As noted by the *Hughes II* court, the Sixth Circuit has "squarely held that 'employment agreements are no longer the relevant starting point for whether an employee is paid on a salary basis.  The question is therefore not what [a plaintiff] was owed under his employment agreement; rather, the question is what compensation [the plaintiff] actually received.'"  *Id.* (quoting *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 848 (6th Cir. 2012)).[5]

The Court need not decide at this juncture whether MBF's policy of paying its inspectors on a day rate meets the salary basis requirement of the FLSA exemptions.  The Court need only determine whether making such a decision would necessitate individual inquiries that would predominate over the common questions identified by Plaintiff.  In this regard, Plaintiff has overstated *Keen*'s holding.  While it is true that the Western District of Texas ultimately concluded that Mr. Keen's compensation was inconsistent with the salary basis requirement, it did so after a careful analysis of how much and how often Mr. Keen was actually paid.  2016 WL 3253895 at *4.  Indeed, during several pay periods, Mr. Keen received less than $455 per week.  *Id.*  Moreover, *Keen* was not a collective or class action, and thus the court did not need to consider whether the salary basis issue could be resolved on a classwide basis.  *Keen* does not,

---

[5] The *Hughes II* decision is currently on appeal to the Sixth Circuit.

therefore, stand for the proposition that an employer policy of paying employees on a day rate can never meet the FLSA's salary basis test.

Because the Sixth Circuit has provided clear guidance that an employee's actual compensation is the starting point for analyzing the salary basis requirement (a point which Plaintiff has not cogently refuted), individual inquiries will be necessary to determine whether each inspector meets the salary basis requirement. However, these individual inquiries will not be so intensive as to predominate over the multiple common questions that Plaintiff has identified. It is evident from the pay statements submitted by MBF (Doc. 69-2) that MBF maintains electronic payroll records, and therefore the parties can calculate each inspector's weekly compensation in a fairly automated fashion that will not require lengthy examination of witnesses. Moreover, the relatively small size of the class (approximately 67 individuals) means that the individual compensation analyses will not take up an inordinate amount of time or resources in comparison to evaluation of the common questions. The Court is therefore persuaded that the necessary individual inquiries will not result in the "myriad mini-trials that Rule 23(b)(3) seeks to prevent." *Sandusky Wellness Ctr.,* 863 F.3d at 470.

### 2. Superiority of the class action mechanism

Class treatment is superior to other methods of adjudication when it "will promote economy, expediency, and efficiency." *Salvagne v. Fairfield Ford, Inc.*, 264 F.R.D. 321, 330 (S.D. Ohio 2009) (Spiegel, J.). "[W]here many individual inquiries are necessary, a class action is not a superior form of adjudication. However, where a threshold issue is common to all class members, class litigation is greatly preferred." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 758 (6th Cir. 2013) (quoting *Young*, 693 F.3d at 545).

Rule 23 sets forth four non-exhaustive factors to consider in determining superiority:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  Plaintiff argues, and the Court agrees, that these four factors weigh in favor of class treatment in this case.  First, individual class members likely have little interest in commencing or controlling separate actions due to the retaliation concerns discussed *supra*. Second, there are no other currently pending actions related to MBF's failure to pay overtime wages to its inspectors.  Third, all putative class members worked in Ohio, making this District an appropriate forum.  Fourth, the class action will be manageable given the relatively small class size and limited necessary individual inquiries.

MBF declines to analyze these four enumerated factors beyond characterizing them as not "weigh[ing] heavily—or hardly at all—toward or against certification."  (Doc. 69, Mem. in Opp. at 24).  While the Court disagrees with this characterization, MBF is correct that the four factors listed in Rule 23(b)(3) are non-exhaustive.  MBF argues that class treatment is not superior in this case because the inspectors' claims are not "negative value" claims; attorney's fees are available to successful plaintiffs; a Rule 23 opt-out class action is in conflict with the FLSA's opt-in collective action scheme; and a Rule 23 class judgment on the Fair Wage Act claims may preclude class members from pursuing their individual FLSA claims.  All of these arguments lack merit.

### a.    Lack of negative value claims and availability of attorney's fees

The crux of both the "negative value" and attorney's fees arguments is that the expense of litigation would not preclude inspectors from prosecuting their Fair Wage Act claims individually, and therefore class treatment is not superior to adjudication of individual claims.  In many class actions, the likely recovery for each individual class member is so small as to create a net loss for any individual who chooses to pursue an individual lawsuit.  "A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."  *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997)).

Here, MBF argues, the claims of individual class members are large enough to create positive value for the successful plaintiff even without the aggregation of class claims.  (Doc. 69, Mem. in Opp. at 27).  This is because "the putative class members seek one and one-half times their standard pay for *every hour* over 40 worked in a week.  Many worked at MBF for months or even years."  (*Id.* (citing Doc. 60-8, Class List)).  But the Class List also demonstrates that 21 of the putative class members (that is, nearly one third of the putative class) worked for MBF in Ohio for fewer than 100 days during the class period, and for some inspectors as few as 5 or 8 days.  (Doc. 60-8).  Therefore, while those class members who worked in Ohio for multiple years may have large enough claims to prevent an individual lawsuit from being cost-prohibitive, many of the class members would still be left with negligible positive, or even negative, value after receiving judgment in their favor.

MBF further asserts that the availability of attorney's fees for successful plaintiffs under Ohio Revised Code § 4111.10(A) should negate any concern over the size of individual claims. *See*, *e.g.*, *Coleman*, 296 F.3d at 449 ("[T]he primary justification for class treatment of these claims is largely absent in this case because the [Equal Credit Opportunity Act]'s provision for

the award of attorney's fees and costs to successful plaintiffs eliminates any potential financial bar to pursuing individual claims."). But again, the cases relied on by MBF in arguing that individual suits are a feasible alternative to class treatment fail to address the inherent fear of employer reprisal. *See Molina v. Roskam Baking Co.*, No. 1:09-CV-475, 2011 WL 5979087, at *6 (W.D. Mich. Nov. 29, 2011) (collecting cases within the Sixth Circuit, primarily in the consumer context, in which the presence of a fee shifting provision weighed against superiority of class treatment).

While the fee shifting provision of the Fair Wage Act may "eliminate any potential financial bar to pursuing individual claims," it does not eliminate the reasonable apprehension of inspectors, in an employment-at-will context, that their employer may decide not to assign them further work after losing a suit for unpaid overtime wages. Therefore, the Court finds that the Fair Wage Act's fee shifting provision does not preclude a finding of superiority in this case.

### b.  Interplay of Rule 23 class actions and FLSA collective actions

MBF argues that certifying the Fair Wage Act claims for "opt out" class treatment under Rule 23 conflicts with the FLSA's "opt in" collective action scheme created by Congress. (Doc. 69, Mem. in Opp. at 27). For this proposition, MBF relies primarily on a case from the Northern District of Illinois holding that

> once employees who receive notice have decided whether to opt into the FLSA class, we will have before the Court as plaintiffs all of the present and former employees who wish to pursue a claim for unpaid wages. Each of those persons then will be able to pursue on his or her own behalf state law claims, which cover the very same conduct as the FLSA claim . . . . Because all of the companies' present and former employees will have the chance to decide whether to join the case, and because those who wish to do so will be before the Court, it makes no real sense to the Court to certify a class that will automatically include all of the employees unless they opt out.

*Muecke v. A-Reliable Auto Parts & Wreckers, Inc.*, No. 01 C 2361, 2002 WL 1359411, at *2 (N.D. Ill. June 25, 2002).

But this District has rejected this view of the relationship between Rule 23 and the FLSA several times. "It is well-settled that employees in Ohio can maintain a Rule 23 class relating to their Ohio claims while simultaneously representing a 29 U.S.C. § 216(b) collective action relating to their FLSA claims." *Dillow v. Home Care Network, Inc.*, No. 1:16-CV-612, 2017 WL 2418738, at *5 (S.D. Ohio June 5, 2017) (Black, J.). *See also, e.g.*, *Swigart*, 288 F.R.D. at 181 ("[T]here is no inherent incompatibility between an opt-in FLSA collective action and an opt-out Rule 23 class action."); *Wade v. Werner Trucking Co.*, No. 2:10-cv-270, 2011 WL 320233, at *2 (S.D. Ohio Jan. 28, 2011) (Sargus, J.) (there is "nothing inherently incompatible between an FLSA opt-in suit and Ohio Act Rule 23 class action and…they are able to coexist within the same litigation."); *Myers*, 2017 WL 3977956 at *3 (same, quoting *Wade*); *Laichev v. JBM, Inc.*, 269 F.R.D. 633, 642 (S.D. Ohio 2008) (Barrett, J.) (certifying both collective action under FLSA and class action under Rule 23 for failure to pay overtime under Ohio state statute).

The Court agrees with the analysis of these previous decisions within this District. Given the inherent fear of employer retaliation involved in wage and hour claims, it is not reasonable to assume, as did the *Muecke* court, that "once employees who receive notice have decided whether to opt into the FLSA class, we will have before the Court as plaintiffs all of the present and former employees who wish to pursue a claim for unpaid wages." 2002 WL 1359411 at *2. As stated above, many employees may choose not to join the FLSA collective action not because they believe they are not aggrieved, but because they wish to preserve the relationship with their employer. A Rule 23 class action is an important tool for those who wish to continue working for their employer while avoiding the reprisal that may arise from affirmatively joining a collective action or commencing an individual action. This factor therefore weighs in favor of the superiority of class treatment.

### c.    Preclusion of FLSA claims

Finally, MBF argues that the Court should not certify a Rule 23 class action because, if the Fair Wage Act claims are certified for class treatment, "employees, who neither opt in to the FLSA collective action nor opt out of the state law class action, will be collaterally estopped from asserting FLSA claims in their own right."  (Doc. 69, Mem in Opp. at 31 (quoting *Woodard v. FedEx Freight East, Inc.*, 250 F.R.D. 178, 186 (M.D. Pa. 2008))).

MBF's statement of the law is correct: a Rule 23 judgment or settlement will generally preclude later FLSA claims by class members based on the same set of facts.  *See Lucas v. JBS Plainwell, Inc.*, No. 1:11-CV-302, 2012 WL 12854880, at *9 (W.D. Mich. Mar. 8, 2012) (finding the plaintiff's FLSA claims precluded by the settlement of a prior Rule 23 wage and hour class action).  Plaintiff cites a handful of cases purporting to reject the preclusive effect of Rule 23 class actions.  *E.g.*, *Espenscheid v. DirectSat USA, LLC*, 708 F. Supp. 2d 781, 792 (W.D. Wis. 2010); *Guzman v. VLM, Inc.*, 2008 WL 597186, at *10 n.11 (E.D.N.Y. Mar. 2, 2008).

Contrary to Plaintiff's assertion, these cases actually conclude that Rule 23 class actions have the preclusive effect described by MBF.  But what Plaintiff's cases also correctly recognize is that preclusion of claims that were or could have been asserted in a class action is not unique to hybrid FLSA actions.  Rule 23 class actions *always* have a preclusive effect on later claims that were or could have been brought in conjunction with the class action, so long as the other requirements of claim or issue preclusion are met.  Thus, the argument that MBF is asserting is an argument not only against hybrid FLSA collective/class actions, but an argument against *all* Rule 23 class actions.

Obviously, the federal courts are unconvinced that claim or issue preclusion is a sufficient reason to find class treatment inferior to other methods of adjudication, and the Court

will not now withhold class certification on this basis.  In class actions such as this one brought under Rule 23(b)(3), the preclusive effect of a judgment or settlement is addressed through the "opt out" mechanism: before being bound by any judgment or settlement, class members will receive notice of the class action, their right to exclude themselves from the class action, and, if they decline to do so, their inability to bring their own individual claims for unpaid overtime. Fed. R. Civ. P. 23(c)(2).  Here, the parties can also categorize class members by whether they have opted in to the FLSA collective action and craft different notices for each category.  This will ensure that each class member fully understands his or her rights as a consequence of remaining in or opting out of the class.  The preclusive effect of a Rule 23 judgment therefore does not render class treatment inferior to other methods of adjudication.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has satisfied the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and the predominance and superiority requirements of Rule 23(b)(3).  The Court therefore **GRANTS** Plaintiff's Motion for Class Certification and certifies Plaintiff's Fair Wage Act claims for the following class:

> All inspection personnel, other than chief inspectors and lead inspectors, who were paid a day rate and who worked for Defendant in Ohio under a Spectra contract at any time since three years prior to filing of this Complaint.

The Clerk shall remove Document 60 from the Court's pending motions list.

**IT IS SO ORDERED.**

 */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**