# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

THOMAS GANCI,

      Plaintiff,

  v.                                              Civil Action 2:15-cv-2959
                                                    Magistrate Judge Chelsey M. Vascura

MBF INSPECTION SERVICES, INC.,

      Defendant.

## OPINION AND ORDER

This matter is before the Court on the parties' Joint Motion for Final Approval of Class and Collective Action Settlement (ECF No. 148). Plaintiff, Thomas Ganci ("Plaintiff" or "Mr. Ganci"), individually and on behalf of similarly situated individuals, seeks final approval of the proposed class action settlement described in the parties' Settlement Agreement (ECF No. 143-3) (the "Settlement"). Notice was given to members of the Settlement Class, and a Fairness Hearing was held before the undersigned on December 2, 2019. Also before the Court is Plaintiff's unopposed Motion for an Award of Attorneys' Fees, Costs, and Class Representative Service Awards (ECF No. 149). Having considered the Settlement and the arguments in support of final approval, the Motions (ECF Nos. 148–49) are **GRANTED**.

## I.    BACKGROUND

**A.    Procedural History**

This action arises out of Defendant MBF Inspection Services, Inc.'s ("Defendant" or "MBF") classification of inspectors as exempt from overtime under the Fair Labor Standards

Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"), and Ohio state wage and hour laws. Plaintiff alleged that MBF incorrectly classified him and other similarly-situated inspectors as exempt, improperly paid them on a day-rate basis rather than an hourly basis, and denied them overtime premiums to which they were entitled.

Plaintiff commenced this action on October 30, 2015. (ECF No. 1.) Defendant contested class treatment both under the FLSA and Rule 23; however, the Court conditionally certified the case as a collective action under the FLSA on September 20, 2016, (ECF No. 26), and granted class certification under Federal Rule of Civil Procedure 23 of the Ohio wage and hour claims on October 27, 2017, (ECF No. 95). Both parties engaged in written discovery, took over a dozen depositions, and exchanged approximately 18,000 pages of documents. (Helland Dec. ¶ 2, ECF No. 143-2.) The parties then filed cross-motions for summary judgment and Defendant moved to decertify the FLSA collective. (ECF Nos. 103, 105, 107.) The parties further engaged in multiple mediation sessions with two different third-party mediators in April 2018 and May 2019. The latter of these mediations resulted in a signed memorandum of understanding, followed by a fully executed Settlement Agreement in July 2019.

Although MBF filed for bankruptcy in June 2018 in the District of New Mexico, the parties sought and obtained a modification of the automatic stay for the limited purpose of allowing settlement approval to proceed in this court. (ECF Nos. 133, 140, 142.)

**B.     Preliminary Approval**

On September 6, 2019, the Court approved the Settlement under the FLSA and granted preliminary approval of the Settlement under Rule 23. (ECF No. 145.) The Court had previously certified the following class under Federal Rules of Civil Procedure 23(a) and 23(b)(3), and the Court adopted the same class definition for settlement purposes:

> All inspection personnel, other than chief inspectors and lead inspectors, who were paid a day rate and who worked for Defendant in Ohio under a Spectra contract at any time since two years prior to filing of this Complaint.

(Prelim. Approval Order 5, ECF No. 145.) The Settlement encompasses 120 individuals: 53 FLSA opt-in Plaintiffs, and 72 Rule 23 class members; 5 individuals are both opt-in plaintiffs and class members. (Brome Dec. ¶ 2, ECF No. 149-2.)

**C.     The Settlement Agreement**

Defendant has agreed to pay a total settlement amount of $2,225,000.00. This includes payments to all accepting Plaintiffs, enhancements awards, attorneys' fees, litigation costs, and expenses of Class Counsel, but excludes the employer's share of payroll taxes. (Settlement § 3, ECF No. 143-3.) The settlement agreement distributes *pro rata* shares of the Settlement amongst Opt-In Plaintiffs who return release forms and all Rule 23 Class Members, determined based on the individual's work history within the applicable statute of limitations, the individual's pay rate, and a uniform assumption of daily overtime worked. Each individual entitled to compensation will receive a minimum of $200.

The settlement amount is non-reversionary. (*Id.* § 7.) The amounts allocated to Plaintiffs who did not accept the settlement payments will be reallocated to Accepting Plaintiffs and will not revert to Defendant. (*Id.*) If checks remain uncashed after 90 days, those amounts will be donated to a *cy pres* recipient. (*Id.*)

The Settlement will be paid according to a bankruptcy plan in the bankruptcy case. As a condition of the settlement, the Parties agreed that the bankruptcy plan must contain certain features. First, the plan must provide for one hundred percent (100%) payment of the settlement amount. (*Id.* § 8.) Additionally, the plan must provide that Defendant will pay fifty percent (50%) of the amount due under the Settlement Agreement on or before the effective date of the bankruptcy plan and the remaining fifty percent (50%) in equal semi-annual installments over a

3

period of two (2) years, accruing interest at the rate of 5.00% per annum. (*Id.*) The first such payment will be due six (6) months after the effective date of the bankruptcy plan. (*Id.*) Defendant will deliver all settlement checks to Class Counsel and the parties agree to work together in good faith to ensure that all Settlement checks are received and cashed by the Accepting Plaintiffs. (*Id.*)

**D.     Notice**

Following preliminary approval, notice of the settlement was sent to the 120 Rule 23 Class Members and Opt-in Plaintiffs. (Skold Dec. ¶ 2, ECF No. 148-2.) None of the Rule 23 Class Members have objected or opted-out of the settlement. (*Id.* ¶ 6.) Class Counsel re-mailed notice to seven FLSA Opt-In Plaintiffs (*id.* ¶ 3) and two Rule 23 Class Members (*id.* ¶ 4). In total, six notices were returned as undeliverable, but all were re-mailed to new addresses and were not returned undeliverable. (*Id.* ¶ 4.)

Of the fifty-three (53) FLSA Collective members, all but four have submitted release forms. (*Id.* ¶ 5.) Several attempts have been made to contact these four individuals via telephone and email to determine whether they intend to submit release forms. (*Id.*) Having had no response, Plaintiff requested at the Fairness Hearing that these four individuals be dismissed from the action and their allocated compensation be re-allocated among the remaining Opt-In Plaintiffs and Rule 23 Class Members.

**II.     APPROVAL OF THE PROPOSED CLASS SETTLEMENT**

The undersigned presided over a Fairness Hearing on December 2, 2019, (ECF No. 150), to hear evidence and argument as to the adequacy of the proposed Settlement. At the Fairness Hearing, the undersigned heard argument from counsel for Plaintiffs and Defendant.

In deciding whether to approve the proposed settlement, the Court must consider whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, the Court considers the following factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011) (citations and internal quotation marks omitted). The Court "enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992).

For the reasons that follow, the undersigned concludes that the Settlement is fair, adequate, and reasonable.

**A.     The Risk of Fraud or Collusion**

First, the undersigned finds that there is no suggestion that the settlement was the product of fraud or collusion. *See Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (citing *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary."). Rather, the settlement was reached after significant discovery, contested motion practice, and ongoing arm's-length negotiations with two third-party mediators. "The participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007). The undersigned concludes that this factor favors approval of the Settlement.

**B.      Complexity, Expense, and Likely Duration of the Litigation**

"Generally, [m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.'" *Wright*, 2018 WL 3966253, at *3 (quoting *In re Telectronics Pacing Sys., Inc.*, 137 F.Supp.2d 985, 1013 (S.D. Ohio 2001) (internal citations omitted.)).  Here, the difficulty Plaintiff and Class Members would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process provide justifications for the Court's approval of the proposed Settlement.

This case is complicated significantly by MBF's bankruptcy.  Other than the settlement approval proceedings, Plaintiffs' motion to lift the automatic bankruptcy stay over this litigation was denied by the Bankruptcy Court.  (ECF No. 136.)  Absent this settlement, recovery would likely have entailed re-litigating the propriety of class treatment in the Bankruptcy Court because of Plaintiffs' class proofs of claim, relitigating the merits of Defendant's exemption defense in the Bankruptcy Court, and then a trial to prove the extent of damages.  Even if Plaintiffs had succeeded in their appeal seeking to lift the bankruptcy stay, resolution in this Court would still have entailed resolution of the pending summary judgment motions and decertification motion, as well as a damages trial.

Settling the case now will result in the saving of time and money to the Parties and serve judicial economy.  If this matter is not settled at this time, there would, inevitably, be additional pre-trial motions, case management conferences and hearings, and trial preparation, which would result in the expenditure of many additional hours of effort.  Furthermore, the additional delay due to post-trial motions and the appellate process could prolong the litigation.

Accordingly, this factor weighs in favor of approving the Settlement. It secures a substantial benefit for the Class Members, undiminished by further expenses and without the delay, cost, and uncertainty of protracted litigation.

**C.      The Amount of Discovery Engaged in by the Parties**

To confirm that Plaintiff and Class Members "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the parties. *Wright*, 2018 WL 3966253 at *4; *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006). "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Wright*, 2018 WL 3966253 at *4 (quoting *UAW v. Gen'l Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006)). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id*.

In this case, the parties engaged in extensive formal discovery. Both parties engaged in written discovery, took over a dozen depositions, and exchanged approximately 18,000 pages of documents. (Helland Dec. ¶ 2, ECF No. 143-2.) Indeed, the case proceeded through the full discovery period before a settlement was reached.

In short, the record demonstrates that both parties have been afforded an adequate opportunity to conduct sufficient discovery to be fully appraised of the legal and factual issues presented as well as the strengths and weaknesses of their cases. Both sides made well-informed

decisions to enter into the Settlement. This factor weighs in favor of approving the proposed Settlement.

**D.      The Likelihood of Success on the Merits**

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek*, 636 F.3d at 245 (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)).

Here, a liability finding in Plaintiffs' favor was not assured. Although Plaintiffs contend that the recently-decided case *Hughes v. Gulf Interstate Field Services, Inc.*, 878 F.3d 183 (6th Cir. 2017) warrants judgment in their favor as to whether MBF's day rate payments satisfy the "salary basis test," the United States Court of Appeals for the Fifth Circuit more recently reached a different conclusion. *See Faludi v. U.S. Shale Sols., L.L.C.*, 936 F.3d 215 (5th Cir. 2019) (finding that $1,000 day rate satisfied the salary basis test). Given the venue transfer to the Bankruptcy Court and out from under controlling Sixth Circuit precedent, liability is far from certain; moreover, even if this Court determined that *Hughes* warranted judgment for Plaintiffs, the recent split of authority would likely embolden Defendant to pursue an appellate challenge, which would significantly delay recovery.

Defendant's bankruptcy filing also adds another layer of uncertainty to this litigation. The settlement provides for a 100% payout plan in bankruptcy. But if Defendant had elected to litigate this case through trial and appeal, the funds available for this settlement could have disappeared. There is no guarantee that success in a class trial in bankruptcy would actually result in payment to class members at the end of Defendant's bankruptcy case. Thus, this settlement avoids one of the greatest risks to Plaintiffs and the class—that Plaintiffs would receive pennies on the dollar after winning on trial.

Accordingly, due to the existence of uncertainties inherent in their claims, the class's likelihood of success on the merits remains uncertain. This factor therefore weighs in favor of approving the proposed Settlement.

## E. The Opinions of Class Counsel and Class Representatives

The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference. *Wright*, 2018 WL 3966253 at *5; *see, e.g., Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs. . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."). *See also Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

In this case, Class Counsel have extensive experience in wage and hour class action litigation. (*See* Brome Dec. ¶ 3, ECF No. 149-2; Firm Resume, ECF No. 149-3.) After significant discovery and arm's-length negotiations, the Parties reached a settlement. Equipped with extensive experience, Class Counsel have concluded that this settlement is not only fair and reasonable but also a good result and confers substantial benefits on the Settlement Class. Class Plaintiff also approves of the settlement, as indicated by his executing the settlement agreement. The undersigned therefore finds that this factor favors approval of the proposed Settlement.

## F. The Reaction of Absent Class Members

The undersigned must also consider the reaction of the absent class members. *Poplar Creek*, 636 F.3d at 244; *In re Broadwing*, 252 F.R.D. at 376.

Here, the undersigned finds that reasonable and adequate notice was disseminated to the settlement class based upon measures described in the preliminary approval motion. Individual

9

notices were sent by first class mail to the 120 Opt-In Plaintiffs and Rule 23 Class Members. Despite such notice, there were no objections or requests for exclusion. This positive response from the Settlement Class weighs in favor of approving the settlement. *Wright*, 2018 WL 3966253, at *5; *see*, *e.g.*, *In re Broadwing*, 252 F.R.D. at 376.

**G.     The Public Interest**

"Public policy generally favors settlement of class action lawsuits." *Hainey v. Parrott*, 617 F.Supp.2d 668, 679 (S.D. Ohio 2007) (citations omitted). In this case, the Settlement confers immediate benefits on the Settlement Class, avoids the risks and expense in further litigation, and conserves judicial resources. The undersigned therefore finds that this factor favors approving the settlement.

In sum, after considering all the relevant factors, the undersigned concludes that the Settlement provides a substantial benefit to the parties and is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2).

### III.     ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

**A.     Attorneys' Fees**

Class Counsel seeks an award of 33 1/3% of the $2,225,000 total settlement amount, or $741,666.67. Defendant has not opposed this request for fees nor have any Class Members. In addition to the Motion for Approval of the Settlement, the undersigned has reviewed Plaintiffs' counsel's Motion for Award of Attorneys' Fees and considered the additional arguments made in support of counsel's request.

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Rule 23 authorizes a court to "award reasonable attorney's fees and non-taxable costs that are authorized by law or by the

parties' agreement." *See* Fed. R. Civ. P. 23(h).  Plaintiff's successful pursuit of this action can also support an award of reasonable attorneys' fees.  *See Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194 (6th Cir. 1974) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

District courts apply a two-part analysis to assess the reasonableness of an attorney fee petition.  *Wright*, 2018 WL 3966253, at *6; *see In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d 752, 760 (S.D. Ohio Dec. 31, 2007).  First, the Court must determine the appropriate method to calculate the fees, using either the percentage of fund or the lodestar approach.  *Id*.  Whichever method is utilized, the United States Court of Appeals for the Sixth Circuit requires "only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances."  *Rawlings*, 9 F.3d at 516.  Second, the Court must consider six factors to assess the reasonableness of the fee. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).

Here, the Court is applying the percentage of the fund method. *See, e.g., Gascho v. Global Health Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (indicating that the district court must make a "clear statement" as to which calculation method is being applied); *see also Kimber Baldwin Designs, LLC v. Silv Commc'n, Inc.*, No. 1:16-cv-448, 2017 WL 5247538, at *5 (S.D. Ohio Nov. 13, 2017) ("In the Southern District of Ohio, the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier.") (internal citations and quotations omitted).  Accordingly, the Court will consider the following factors in determining whether the fee request is reasonable under the circumstances:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewardin2016

11

> (2) g attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Moulton*, 581 F.3d at 352.

Under the circumstances of this specific case, particularly where neither Defendant nor Plaintiff has opposed the fee request and the Class has received a "substantial benefit," the undersigned concludes that all of these factors weigh in favor of approving an award of attorneys' fees.

As to the first factor, the undersigned has already described above the benefit conferred to the Class Members through Settlement. This factor therefore weighs in favor of approving the requested award.

Second, the value of the services on an hourly basis, multiplied by the hourly rate, favors the proposed fee award. Here, although not required, a cross-check using Class Counsel's lodestar amount weighs in favor of granting the requested fee award. As Class Counsel represent in their memorandum and accompanying declarations, and as the undersigned has confirmed via an *in camera* review of Class Counsel's detailed billing records, their lodestar currently amounts to approximately $780,000.00. (Brome Dec. ¶¶ 4–5, ECF No. 149-2.) This means that the amount of fees sought, $741,666.67, is less than the amount Class Counsel expended in representing the class. Given that courts frequently approve attorney's fee awards equaling two to three times the lodestar amount, the fees sought by Class Counsel in this case are well within the reasonable range. *See Dillow v. Home Care Network, Inc.*, No. 2:16-cv-612, 2018 WL 4776977, at *7 (S.D. Ohio Oct. 3, 2018) (approving fee award that was "approximately 2.9 times the lodestar" and noting that the multiplier "is well within the acceptable range of multipliers" for a wage and hour action); *Feiertag v. DDP Holdings, LLC*, No. 2:14-cv-2643, 2016 WL 4721208, at *7 (S.D. Ohio Sept. 9, 2016) ("Awards of common-fund attorney fees in amounts

two to three-times greater than the lodestar have been found reasonable."); *Lowther v. AK Steel Corp.*, 1:11-cv-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a "very acceptable" 3.06 multiplier and citing cases finding multipliers ranging from 4.3 to 8.74 to be reasonable). Moreover, Class Counsel is likely to expend significant additional time on behalf of the class even after approval of the settlement: the bankruptcy plan must still be confirmed in the Bankruptcy Court, and Class Counsel must oversee the payment of settlement funds in installments over the next several years. As a result, Class Counsel's lodestar amount will only increase, while the amount of attorney's fees awarded will not. Thus, the lodestar cross-check confirms the reasonableness of the award.

Third, Class Counsel represents that they took on this case pursuant to a contingency fee agreement. In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award. *Wright*, 2018 WL 3966253 at 7; *see, e.g., Kritzer*, 2012 WL 1945144, at *9 ("Having taken the case on a contingency fee basis, Plaintiffs' counsel undertook the risk of not being compensated, a factor that cuts significantly in favor of awarding them a significant fee recovery here.")

The undersigned next considers whether the fourth factor, society's stake in rewarding attorneys who produce such benefits, militates in favor of an award of the requested attorney's fees. Class actions such as this "have a value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources." *Gascho*, 822 F.3d at 287; *see also Kritzer*, 2012 WL 1945144, at *9 ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not

obtain on their own."). Without a class action, the individual plaintiffs would not have had a strong incentive to pursue recovery because any monetary award would have been substantially outweighed by the costs to litigate their cases.

The remaining two factors, the complexity of the litigation and the professional skill and standing of the attorneys involved, also militate in favor of granting the requested award. "Generally speaking, '[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.'" *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 174 (S.D.N.Y. 2000)). Further, as explained supra, Class Counsel have extensive experience in class action and employment discrimination litigation. (*See* Brome Dec. ¶ 3, ECF No. 149-2; Firm Resume, ECF No. 149-3.)

For all of these reasons, the undersigned concludes that these factors favor approval of the fee award of $741,666.67 to Class Counsel.

**B.      Settlement Administration and Other Costs**

Class Counsel avers that out-of-pocket expenses currently amount to $63,328.12. (Brome Dec. ¶ 19, ECF No. 149-2.) The undersigned finds that all of these costs are reasonable and necessary to litigate and settle this case and therefore approves the request of $63,328.12 for out-of-pocket expenses. *Cf. Feiertag v. OOP Holdings, LLC*, No. 14-cv-2643, 2016 WL 4721208, at *8 (S.D. Ohio Sept. 9, 2016). These costs are particularly reasonable because Class Counsel is administering the settlement in-house.

**C.      Service Awards for Class Representatives**

Service "awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (reviewing such awards under an abuse of discretion

standard). Notably, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (internal quotation marks and citations omitted).

Here, the Settlement proposes to award $5,000 to Mr. Ganci for his efforts in bringing and pursuing this action. The Settlement proposes to award an additional $500 to each individual who was deposed in this matter or MBF's bankruptcy litigation (including Mr. Ganci) for each time the individual was deposed. Considering this service, the Court approves the requested service awards to Mr. Ganci and the other deposed plaintiffs. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Arctic Express, Inc.*, No. 2:97-cv-750, 2016 WL 5122565, at *7 (S.D. Ohio Sept. 21, 2016) (approving two service awards of $25,000 each from a $3 million settlement); *Davidson v. Henkel Corp.*, No. 12 Civ. 14103, 2015 WL 13034891, at *3 (E.D. Mich. Dec. 8, 2015) (approving $15,000 service award for the named plaintiff from a $3,350,000 settlement fund); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving six service awards of $50,000 each); *see also Dillow*, 2018 WL 4776977, at *8 (granting $8,500 service award from a $113,224 settlement, because named plaintiff "contributed her efforts to the lawsuit by providing information and documents to her counsel, remaining informed and involved throughout the litigation, contacting and consulting her counsel concerning the litigation, reviewing documents and settlement proposals, and was willing to testify at a trial").

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Joint Motion for Final Approval of Class and Collective Action Settlement and Motion for an Award of Attorneys' Fees, Costs, and Class Representative Service Awards (ECF Nos. 148 and 149), and further **ORDERS** as follows:

1. The Court approves the settlement and all terms set forth in the Settlement Agreement, and finds that the settlement is, in all respects, fair, adequate, reasonable for the reasons set forth in the Court's September 6, 2019 Preliminary Approval Order (ECF No. 145) and is binding on Defendant, all members of the Rule 23 Class who have not timely and properly opted out, and all Opt-In Plaintiffs, except as specified in paragraph 2.

2. Any Opt-In Plaintiffs who have not to date returned release forms are hereby **DISMISSED** from this action with prejudice, and any compensation amounts allocated to such individuals shall be re-allocated to the remaining Opt-In Plaintiffs and Rule 23 Class Members.

3. Class Counsel shall receive attorney's fees in the amount of one third of the gross settlement amount, $741,666.67.

4. Class Counsel shall receive reimbursement of costs of $63,328.12.

5. The service payments to the Named Plaintiff, and to each Plaintiff that was deposed in this matter or Defendant's pending bankruptcy proceeding, are approved as requested and shall be distributed as requested in the Settlement.

6. If settlement checks remain uncashed for 90 days after issuance, those amounts will be donated to Shriners Hospital for Children in Cincinnati, Ohio as a *cy pres* recipient.

7. The Litigation is hereby dismissed with prejudice, with each side to assume their respective costs and attorneys' fees (other than such costs and attorneys' fees approved by the Court as set forth herein), subject to the Court's ongoing jurisdiction over the settlement process and any disputes that may arise over the administration of the settlement.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE